NO. 07-01-0115-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 13, 2002

_____

TRACY COOK-PIZZI AND HUSBAND, JOE PIZZI, APPELLANTS

V.

VAN WATERS & ROGERS, INC., A SUBSIDIARY OF UNIVAR, ET AL., APPELLEES

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 94-546,148-B; HONORABLE MACKEY K. HANCOCK, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Tracy-Cook Pizzi and her husband Joe Pizzi present one issue containing five sub-issues challenging the summary judgment[1] that they take nothing on their claim for

---

[1]Although Tex. R. Civ. P. 166a does not prohibit the presentation of a combination traditional and no-evidence motion, the better practice is to file two separate motions. Grant v. Southwestern Elec. Power Co., 20 S.W.3d 764, 768 (Tex.App.–Texarkana 2000, pet. granted); Kelly v. LIN Television of Texas, L.P., 27 S.W.3d 564, 569 (Tex.App.--Eastland 2000, pet. denied).

personal injuries under the Deceptive Trade Practices-Consumer Protection Act[2] (hereafter DTPA) and claims of negligence and products liability against Van Waters and Rogers, Inc., Degussa Corporation, E. I. Du Pont De Nemours and Company, Du Pont Chemicals, a division of E. I. Du Pont De Nemours and Company, and Du Pont Chemical and Energy Operations, Inc. Based upon the rationale expressed herein, we affirm.

Tracy Cook-Pizzi, an ICU nurse employed by St. Mary of the Plains Hospital, and her husband, Joe Pizzi, brought the underlying action for injuries she claims were caused by fumes from a sink drain in an ICU room of the Hospital. Tracy claims the fumes were generated in March 1992, when one of her co-employees at the Hospital poured chemicals, including hydrogen peroxide, into a clogged sink with water standing in it to clean the drain.

Before the occurrence, the Hospital employed James McDonald, a waste water consultant, d/b/a Controlled Aqua Systems,[3] to study and submit a waste water treatment study for the Hospital in 1991. On April 30, 1991, he submitted a written study to the Hospital. According to the report, a process by which ozone is added directly to the waste stream produced by an on-site generator and a process that adds a 50% hydrogen peroxide solution to the waste stream in the sump in the basement of the Hospital were

---

[2]Tex. Bus. & Com. Code Ann. §§ 17.46-17.826 (Vernon 1987 & Pamph. Supp. 2002).

[3]The Pizzis' action against McDonald has been severed and the consultant is not a party to this appeal.

considered. Both procedures oxidize material or solids in the waste water stream so that the oxidized material remains fluid and free flowing. McDonald preferred the hydrogen peroxide process because (1) the setup cost was substantially less than the cost of installing a DAF unit required for ozonization, (2) it would not require any more labor than the existing procedure of applying an enzyme solution, and (3) containers of the hydrogen peroxide solution can be carried to other areas of the Hospital to maintain the smaller *sewer* lines. (Emphasis added). Several on-site jar tests were conducted of effluent samples to confirm, among other things, that very high concentrations of the hydrogen peroxide solution would not generate heat or any condition that would create a hazardous condition, and the results of the analysis conducted by a testing laboratory were provided to the Hospital.

McDonald also conducted an in-service training program and provided an audio-visual training tape which was furnished by Degussa. The report reflects that employee participation was good and a test was given to all employees after the presentation. The report contained the following warning:

> It may sound redundant, but when personnel are using Hydrogen Peroxide Solutions, IT IS MANDATORY THAT ALL THE SAFETY AND HANDLING PROCEDURES that have been presented be followed EXACTLY!

(Emphasis in original). According to a letter dated May 2, 1991, from McDonald to Jim Price, Director of Plant Operations for the Hospital, during a casual visit at a local store,

3

Price told McDonald the Hospital had tried using hydrogen peroxide to clean a clogged drain in a sink located in the kitchen. McDonald's letter concluded:

> I further reminded you that while I did not recommend the use of Hydrogen Peroxide in drains, it would clean them out. Personnel must be careful not to use any other chemicals either before or after the addition of the Hydrogen Peroxide.

By his deposition, McDonald testified that he did not approve of the use of hydrogen peroxide in sink drains, but because of pressure from the Hospital Director of Plant Operations, he did write guidelines for pouring hydrogen peroxide in drains with smaller pipes than sewer pipe. Du Pont and Degussa supplied hydrogen peroxide to Van Waters in bulk and Van Waters marked the chemical in 55-gallon drums bearing a Van Waters label and sold it to the Hospital. Du Pont and Degussa provided material safety data sheets (MSDS)[4] to Van Waters and these sheets and the Van Waters sheets were provided to the Hospital.

Because multiple parties are involved, the grounds for the three motions for summary judgment are not uniform, and the claims against Du Pont, Degussa, and Van Waters are not common, we briefly summarize the claims against each party, the grounds of the motions, and posture of the case before commencing our consideration of the issues presented. After alleging that Tracy was exposed to fumes produced after hydrogen peroxide was poured into a sink drain in an ICU room, by a paragraph in their fourth

___

[4]Occupational Safety and Health Standards, 29 C.F.R. § 1910.1200 (2000).

4

amended original petition, the Pizzis sought damages based on theories of strict liability, negligence, breach of warranty (specifically for a particular purpose), and section 17.46(b)(5) and (23) of the DTPA.[5] All the Pizzis' claims were based on their contention that Du Pont, Degussa, and Van Waters were required to provide adequate MSDS sheets to Tracy and her employer and that they failed to adequately warn Tracy of the dangers of hydrogen peroxide.[6] Also, the Pizzis allege that Degussa and Van Waters (not Du Pont) knew or should have known of the particular purpose for which the chemical was to be used at the Hospital, but failed to warn McDonald and the Hospital of the dangers, thereby breaching their warranty of fitness for a particular purpose.[7]

Presenting similar but not entirely common defenses, Van Waters, Degussa, and Du Pont filed their motions for summary judgment. As grounds they alleged:

---

[5]No special exceptions were lodged against the global pleading. A motion for summary judgment cannot be used as a substitute for a special exception. Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983).

[6]Among other allegations, the paragraph alleges that "[t]he waste water treatment program then put in place was inadequately designed and/or marketed and not fit for the purposes intended," but it does not identify the party charged with the design and marketing responsibility. Because the briefs and summary judgment evidence demonstrate that McDonald designed and/or marketed the waste water treatment system and he was also named as a party but has been severed from this cause, questions of the design and marketing of the waste water treatment are not presented for consideration.

[7]The Pizzis do not contend that Du Pont breached any warranty of fitness for a particular purpose.

## Grounds of Motions for Summary Judgment

| Degussa | Du Pont | Van Waters |
| --- | --- | --- |
| a. Pizzis' claims for negligence and strict liability should be denied because the product's use was not an intended or foreseeable use.<br><br>b. Pizzis' claims for breach of warranty of fitness for particular purpose fails because there is no evidence (1) of the product's intended use, (2) that Degussa knew of the Hospital's unforeseeable use, and (3) that the Hospital relied on Degussa to select a drain cleaner.<br><br>c. No evidence that Tracy was a consumer pursuant to the DTPA.<br><br>d. Degussa adopted all of Du Pont's grounds.<br><br>Motion based on Rule 166a (b) and (i) of the Texas Rules of Civil Procedure. | a. No evidence that Pizzis are consumers.<br><br>b. Using industrial strength hydrogen peroxide as a drain cleaner is not an intended or reasonably foreseeable use of the product.<br><br>c. Pizzis do not allege that defendant knew or should have known and no evidence that defendant knew of the Hospital's unforeseeable use or that the Hospital relied on defendant to select a drain cleaner.<br><br>d. Pizzis' negligence and strict liability claims should be denied because Van Waters and the Hospital were sophisticated commercial purchasers of industrial strength hydrogen peroxide.<br><br>e. Pizzis cannot prove that defendant sold the product which allegedly harmed plaintiff or had any relation to that product.<br><br>Motion based on Rule 166a (b) and (i) of the Texas Rules of Civil Procedure. | a. No evidence that Tracy was a consumer.<br><br>b. Pizzis' negligence and strict liability claims should be denied because using industrial strength hydrogen peroxide as a drain cleaner is not an intended or reasonably foreseeable use of the product.<br><br>c. Pizzis' claims for breach of implied warranty of fitness for a particular purpose should be denied because there is no evidence that defendant knew of the Hospital's unforeseeable use or that the Hospital relied on defendant to select a drain cleaner.<br><br>d. Pizzis' negligence and strict liability claims should be dismissed because the Hospital was a sophisticated commercial purchaser of industrial strength hydrogen peroxide.<br><br>Motion based on Rule 166a (b) and (i) of the Texas Rules of Civil Procedure. |

Although the Pizzis' claims against Du Pont, Degussa, and Van Waters were not common and the three motions for summary judgment were not uniform, by one response the Pizzis presented their issues in opposition to the motions for summary judgment and their issues on appeal as follows:

| Pizzis' response to all motions | Issues presented on appeal |
|---|---|
| (a) Plaintiff was a consumer under the DTPA. | (a) The Hospital's use of hydrogen peroxide was foreseeable and not misuse. In any event, manufacturers have a duty to warn of risks associated with misuse. |
| (b) Pouring hydrogen peroxide down the drain at the Hospital was not an unforeseeable use and defendants misstate the law of strict liability. | (b) Van Waters and Degussa breached their warranty of fitness for a particular purpose. |
| (c) Van Waters and Degussa knew or should have known of the particular purposes for which the hydrogen peroxide was to be used and that the Hospital relied on them. | (c) The learned intermediary defense does not absolve defendants. |
| (d) The Hospital was not a sophisticated user. | (d) Plaintiff was a consumer under the DTPA. |
| (e) Du Pont is a proper defendant under alternative liability. | (e) The hydrogen peroxide was manufactured by either Degussa or Du Pont; it is their burden to exculpate themselves. |

The Pizzis did not present any objections in the trial court contending that the motions did not conform to the requirements of Rule 166a (b), (c), and (i), or objections to the form or admissibility of the summary judgment evidence in the trial court. Before commencing our analysis, we first set out the appropriate standards of review.

## Summary Judgment Standard of Review
## Rule 166a(c)

In reviewing a summary judgment, this Court must apply the standards established in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985), which are:

1.  The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2.  In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3.  Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  A movant must either prove all essential elements of his claim, MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986), or negate at least one essential element of the non-movant's cause of action.  Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).  Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment.  City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.--Houston [1st Dist.] 1996, writ denied).  Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the trial court by written answer or other written response to the motion and not by mere reference to summary judgment evidence.  McConnell v. Southside School Dist., 858 S.W.2d 337, 341 (Tex. 1993).  Issues

8

not expressly presented to the trial court in writing shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c). Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989). When a summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Insurance Co. Of N. Am. v. Security Ins., 790 S.W.2d 407, 410 (Tex.App.--Houston [1st Dist.] 1990, no writ).

**No-Evidence Summary Judgment Standard of Review**
**Rule 166a(i)**

Rule 166a(i) entitled "No-Evidence Motion," provides that a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. When a summary judgment does not specify or state the grounds relied on, it will be affirmed on appeal if any of the grounds presented in the motion are meritorious. *Carr*, 776 S.W.2d at 569; *Insurance Co. Of N. Am.*, 790 S.W.2d at 410. Where a motion is presented under Rule 166a(i) asserting there is no evidence of one or more essential elements of the non-movant's claims upon which the non-movant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense as under subparagraph (a) or (b). Rather, although the non-moving

9

party is not required to marshal its proof, it must present evidence that raises a genuine fact issue on the challenged elements. *See* Tex. R. Civ. P. 166a, Notes and Comments.

Because a no-evidence summary judgment is essentially a pretrial directed verdict, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. Roth v. FFP Operating Partners, 994 S.W.2d 190, 195 (Tex.App.--Amarillo 1999, pet. denied); Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.App.--Austin 1998, no pet.). Thus, our task as an appellate court is to ascertain whether the non-movant produced any evidence of probative force to raise a fact issue on the material questions presented. *Id*. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. Merrill Dow Pharmaceuticals v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Fiesta Mart, Inc.*, 979 S.W.2d at 70-71. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

## DTPA Claim[8]

The Pizzis' claim under the DTPA is common to Degussa, Du Pont, and Van Waters. By sub-issue D, the Pizzis contend the trial court erred in granting summary judgment because Tracy was a "consumer" under the DTPA. We disagree. In order to have standing to maintain their action under the DTPA, the Pizzis must demonstrate that Tracy was a consumer of the goods or services of Degussa, Du Pont, and Van Waters as the term is applied in section 17.45(4) of the DTPA, that she acquired the goods or services by purchase or lease, and that the goods or services form the basis of their complaint. Lukasik v. San Antonio Blue Haven Pools, 21 S.W.3d 394, 400 (Tex.App.--San Antonio 2000, no pet.); Vinson & Elkins v. Moran, 946 S.W.2d 381, 406-07 (Tex.App.--Houston [14th Dist.] 1997, writ dism'd by agr.). Tracy's standing as a consumer is a question of law. Hedley Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 831 (Tex.App.–Amarillo 1993, writ denied); Metropolitan Life Ins. Co. v. Haney, 987 S.W.2d 236, 242 (Tex.App.--Houston [14th Dist.] 1999, pet. denied). Although the statute does not require the consumer to be a direct purchaser, Kennedy v. Sale, 689 S.W.2d 890, 891-92 (Tex. 1985), the transaction must be specifically required by or intended to benefit the party claiming consumer status. *Lukasik*, 21 S.W.3d at 401. Moreover, an incidental benefit to an employee is not sufficient to create standing as a consumer. Brandon v. American Sterilizer Co., 880 S.W.2d 488, 492 (Tex.App.--Austin 1994, no writ.). As a nurse working

---

[8]Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon Pamph Supp. 2002).

11

for the Hospital, Tracy's status as a consumer is not determined by the existence of a contractual relationship; rather, it is determined by the parties' relationship to the transaction. *See* Arthur Andersen v. Perry Equipment Corp., 945 S.W.2d 812, 815 (Tex. 1997).

In *Metropolitan Life*, the court held that MetLife's primary purpose in developing and selling software to its agents was not for the benefit of the agents, but was incidental to MetLife's ultimate goal to increase the sale of its products. 987 S.W.2d at 243. Accordingly, an agent who bought the software was not a consumer under the DTPA. In support of Tracy's status as a consumer, the Pizzis cite Kennedy v. Sale, 689 S.W.2d 890 (Tex. 1985), and contend the Hospital bought the hydrogen peroxide for Tracy's benefit; however, they do not make any reference to the summary judgment evidence to support such contention and we have found none. Applying the appropriate standard of review, we conclude the summary judgment evidence presents no evidence to raise a genuine issue of material fact of Tracy's status as a consumer. Sub-issue D is overruled as to Du Pont, Degussa, and Van Waters.

**Hospital Use to Clean Drains Foreseeable (Misuse)**
**and Learned Intermediary Defense**
**Du Pont and Degussa**

By sub-issue A, the Pizzis contend the Hospital's use of industrial strength hydrogen peroxide was foreseeable and not misuse, and in any event, manufacturers have a duty

12

to warn of risks associated with misuse.[9]  By sub-issue C, the Pizzis contend that the learned intermediary defense does not absolve Du Pont, Degussa, and Van Waters. Because these issues involve similar issues and evidence, they will be considered together.

We commence our analysis by noting that the Pizzis do not contend the Hospital based its decision to use the hydrogen peroxide on the recommendation of either Du Pont or Degussa.  Instead, they contend that "based on McDonald's recommendation, the hospital used 50% and 35% hydrogen peroxide in the sewage sump and to maintain clear sewer drain lines."  Among other things, Du Pont[10] and Degussa alleged that the Pizzis' claims of negligence and strict liability should be denied because Van Waters and the Hospital were sophisticated commercial purchasers of industrial strength hydrogen peroxide. Accordingly, citing Munoz v. Gulf Oil Co., 732 S.W.2d 62, 65 (Tex.App.--Houston [14th Dist.] 1987, writ ref'd n.r.e), Du Pont and Degussa urged that they owed no duty to warn the ultimate consumer.  According to the Pizzis' response, "Van Waters is one of the larger distributors of chemicals in the world with 104 locations in North America and Puerto Rico."  Van Waters maintained a tank farm in Dallas where it would repackage bulk materials, such as hydrogen peroxide into 55-gallon drums with Van Waters labels and

---

[9]Although the issue presented in the trial court is not identical to the issue presented on appeal, we conclude that it substantially complies with the rule that all issues in opposition to a motion for summary judgment must be presented in writing to the trial court. *Casso*, 776 S.W.2d at 553.

[10]Degussa adopted Du Pont's motion.

then truck the materials to its branch in Odessa and elsewhere. Although the Pizzis contended that the Hospital was not a sophisticated user, they did not contend that Van Waters was not a sophisticated user. Moreover, by their appellate brief, the Pizzis acknowledge that Van Waters passed along the warnings from Du Pont and Degussa and had more knowledge regarding the dangers of hydrogen peroxide than McDonald. Because the issue of Van Waters's status as a learned intermediary and the resulting defense were not expressly presented to the trial court by the Pizzis in their response or otherwise, it may not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c); *Casso*, 776 S.W.2d at 553.

Moreover, the Pizzis' claims of negligence and strict liability are premised on the alleged duty of Du Pont and Degussa to adequately warn of potential misuse of their products. Yet, by their argument, they acknowledge that Du Pont and Degussa did provide MSDS sheets, which provided in part:

Du Pont

Decomposition:   Contamination and heat may cause self-accelerating exothermic decomposition with oxygen, gas and steam release that can cause dangerous pressures. Reacts dangerously with rust, dust, dirt, iron, copper, heavy metals or their salts (such as mercuric oxide or chloride), alkalis and with organic materials (especially vinyl monomers). . . .

Fire and Explosion Hazards

Strong oxidizer. Contact with clothing or combustibles may cause fire. Contact with organic liquids or vapors may cause immediate fire or explosion, especially if heated. Under certain circumstances, detonation may be delayed. Oxygen released from hydrogen peroxide may force organic or hydrogen vapors into an explosive range. Follow appropriate National Fire Protection Association (NFPA) codes.

14

Degussa

Danger! This product is a strong oxidizer which may release oxygen and promote the combustion of flammable material.

\* \* \*

In addition to training given to Hospital maintenance personnel, by his letter of May 2, 1991, McDonald reminded the Hospital that he did not recommend that hydrogen peroxide be used in drains.

According to the Pizzis, the hydrogen peroxide was poured into the drain by a hospital employee. Even though the Pizzis do not allege that Tracy's injuries resulted from her use of the chemical, they contend that Du Pont and Degussa had the duty to provide her with adequate warning of hazards of the chemical by the MSDS sheets. However, 29 C.F.R. § 1910.1200 (b) provides in part:

> (b) Scope and application. (1) this section requires chemical manufacturers or importers to assess the hazards of chemicals which they produce or import, and all employers to provide information to their employees about the hazardous chemicals to which they are exposed, by safety data sheets, and information and training. In addition, this section *requires distributors to transmit the required information to employers.*

(Emphasis added). Although, the regulation requires that the MSDS sheets be provided to the employer, it imposes the duty of warning and training employees on the employer. Because the Pizzis did not challenge the adequacy of the warning in the trial court, that issue is not presented for review. Tex. R. Civ. P. 166a(c). Accordingly, sub-issues A and C are overruled as to Du Pont and Degussa.

15

**Van Waters**

By sub-issue A, the Pizzis contend the Hospital's use of industrial strength hydrogen peroxide was foreseeable and not a misuse, and that in any event, Van Waters had a duty to warn of risks associated with misuse. By sub-issue C, they contend that the learned intermediary defense does not absolve Van Waters. In the trial court and on appeal, Van Waters asserted that the Pizzis' negligence and strict liability claims should be denied because (1) using industrial strength hydrogen peroxide as a drain cleaner is not an intended or reasonably foreseeable use of the product, and (2) the Hospital was a sophisticated commercial purchaser of industrial strength hydrogen peroxide. Van Waters contends it did not have a duty to further warn because the Hospital was a sophisticated purchaser. Munoz v. Gulf Oil Co., 732 S.W.2d 62, 65 (Tex.App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.). By their response in the trial court, the Pizzis contended that the Hospital was not a sophisticated user; however, on appeal that issue is not presented. *See* Tex. R. App. P. 38.1(e); Ajibade v. Edinburg General Hosp., 22 S.W.3d 37, 40 (Tex.App.---Corpus Christi 2000, no pet.); Rayl v. Borger Economic Development Corp, 963 S.W.2d 109, 114 (Tex.App.--Amarillo 1998, no pet.). Thus, our review is limited to consideration of whether the Hospital's use of the chemical was foreseeable and not misuse and whether warnings were given.

Regarding warnings, Van Waters passed along the MSDS sheets and provided them to the Hospital. Also, in connection with his study, McDonald had tests run by an

16

outside laboratory and the results were furnished to the Hospital. McDonald notified the Hospital by letter that he did not recommend that the chemical be used in lavatory drains. Notwithstanding these warnings and the Hospital's own experience with the chemical that when placed in the kitchen sink drain, it effervesced and bubbled, the Hospital used the chemical in the ICU lavatory as a drain cleaner. We conclude that warnings were given, but because the adequacy of the warnings is not presented for review, sub-issues A and C are overruled as to Van Waters.

## Warranty of Fitness for Particular Purpose
## Degussa and Van Waters

By their no-evidence motions for summary judgment, Degussa and Van Waters both contended that there was no evidence that (1) they knew of the chemicals intended use as a drain cleaner, or (2) the Hospital relied on Degussa or Van Waters to select a drain cleaner. By sub-issue B, the Pizzis contended that Degussa and Van Waters breached their implied warranty of fitness for a particular purpose in failing to provide a product suitable for sewage drain line treatment. We disagree.

Citing section 2.315 of the Texas Business and Commerce Code Annotated (Vernon 1994), the Pizzis contended that Degussa and Van Waters knew or should have known of the Hospital's particular purpose of pouring hydrogen peroxide into the sewer system for pretreatment of waste water in the building before it entered the municipal sewer system. Because the Pizzis' pleadings, response, and appellate brief demonstrate

17

that the particular use made the basis of the underlying suit was the use of hydrogen peroxide in a sink drain in an ICU room, we will review the issue as involving that particular use. Section 2.315 provides:

§ 2.315 Implied Warranty: Fitness for Particular Purpose

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Although the no-evidence motions for summary judgment expressly challenged the element of reliance on no-evidence grounds, the Pizzis' response to the motion does not address reliance. Because the issue of reliance by the Hospital on the skill or judgment of Degussa or Van Waters to furnish a suitable drain cleaner was not presented to the trial court in writing, the issue cannot be considered on appeal. Tex. R. Civ. P. 166a(c); *Casso*, 776 S.W.2d at 553.

Moreover, as mentioned above, by his written report dated April 30, 1991, McDonald submitted a study for the treatment of Hospital waste water. The report suggested a method by which ozone would be added directly to the waste stream by an on-site generator or another method by which a 50% hydrogen peroxide solution would be added to the sewage in the sump which was located in the basement of the Hospital. Among other matters, the Pizzis submitted the deposition of McDonald as summary judgment

18

evidence. By their brief, the Pizzis submit that McDonald's study indicated that the chemical would also be used in lavatories; however, there is no summary judgment evidence demonstrating the study provided to the Hospital was also provided to Van Waters or Degussa. Also, the Pizzis contend that by facsimile, a Hospital employee inquired about using the chemical in lavatories. However, as previously noted, by argument elsewhere in their brief, the Pizzis do not contend that they used hydrogen peroxide with a concentration of 50% in the sump and 35% in the sinks in the hospital room in reliance on Degussa and Van Waters. To the contrary, they assert that the Hospital took such action based upon McDonald's recommendation. Additionally, McDonald had certain tests conducted by an outside laboratory and the results were furnished to the Hospital. Accordingly, applying the appropriate standard of review, we conclude that the Pizzis' summary judgment evidence does not raise a genuine issue of material fact as to their reliance on Van Waters or Degussa to select a drain cleaner. Sub-issue B is overruled. Our disposition of the foregoing sub-issues pretermits our consideration of sub-issue E.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Publish.

19