NO. 07-02-0121-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 24, 2003

_____


MARY LEE HUDSPETH GUNNELS, APPELLANT

V.

CITY OF BROWNFIELD, TEXAS; EARL ELROD, INDIVIDUALLY AND IN
HIS CAPACITY AS CITY INSPECTOR; AND R. C. FLETCHER, INDIVIDUALLY
AND IN HIS CAPACITY AS CITY MANAGER, APPELLEES

_____

FROM THE 121ST DISTRICT COURT OF TERRY COUNTY;

NO. 14,545; HONORABLE MACKEY HANCOCK, JUDGE

_____

Before JOHNSON, C.J. and REAVIS and CAMPBELL, JJ.

**OPINION**

Appellant Mary Lee Hudspeth Gunnels challenges a take-nothing summary

judgment granted in favor of appellees, the City of Brownfield, Richard Curtis Fletcher, and

Earl Elrod, on her claims for malicious prosecution and violation of her constitutional rights

based on two criminal prosecutions for violations of City of Brownfield ordinances. We will affirm the judgment.

The events giving rise to this appeal began on September 5, 1995, when Brownfield city manager Fletcher attended a high school football game. On leaving the game, he found a flyer on his car windshield advertising the sale of homecoming mums. The advertisement, which was placed on many cars in the stadium parking lot, was for "Mary Lee's located at 1415 Broadway" in Brownfield. It contained prices, good from September 8 through September 12, for several styles of mums and related products. Fletcher gave the advertisement to city inspector Elrod and related the circumstances in which he found the document.

In response, Elrod confirmed that appellant resided at 1415 Broadway, and executed two criminal complaints. The first alleged she "knowingly and intentionally distributed circulars or handbills upon the streets of the city" in violation of a city ordinance. The second alleged she "knowingly and intentionally operated a flower shop in an R-1, single family dwelling district," in violation of the city's zoning ordinance. Fletcher notarized each of the complaints.

The charge of distributing handbills was tried to a municipal court jury on November 14, 1995 and appellant was acquitted. The first trial in the zoning violation case ended in a hung jury, and appellant was acquitted on retrial. The following month, appellant filed her petition in this case, *pro se*, naming the City of Brownfield, and Elrod and Fletcher in

2

their individual and official capacities, as defendants. The petition generally alleged claims for malicious prosecution based on the conduct of Elrod and Fletcher. Other than naming the City as a defendant, the petition did not expressly assert any claims against it. On March 1, 1996, each of the defendants specially excepted to the petition alleging it failed to state a cause of action and asserted general denials. The City filed a motion for summary judgment on May 26 on the basis of sovereign immunity.

Appellant amended her petition to allege the prosecutions were motivated by her exercise of first amendment rights and sought recovery for deprivation of her civil rights under Title 42, Section 1983 of the United States Code. In September 1998, appellees filed a document entitled "supplement" to the City's motion for summary judgment. It added Elrod and Fletcher as movants and asserted that Section 101.106 of the Civil Practice and Remedies Code (Vernon Pamph. 2003), gave them the benefit of the City's immunity, that they had immunity for reporting violations of the law, and enjoyed prosecutorial immunity. Also, appellant took a nonsuit on her malicious prosecution claim against the City.

In an amended answer filed October 26, 2000, Elrod and Fletcher raised the affirmative defenses of official immunity, qualified immunity, sovereign immunity, "absolute immunity," and prosecutorial immunity. The same day, all three appellees filed a "Second Supplemental Motion for Summary Judgment" in which they asserted no-evidence grounds under Rule of Civil Procedure 166a(i), and traditional grounds on the basis of immunity. Elrod and Fletcher filed a third document at the same time, entitled a supplement to the

3

"defendants' second supplemental motion for summary judgment." It reasserted their no-evidence and immunity grounds.

Appellant responded to the outstanding motions for summary judgment on May 17, 2001. After a hearing the following August, the trial court found each defendant was entitled to final summary judgment on all claims. The court expressly stated the grant of summary judgment for the City was not based on sovereign immunity. The judgment on appeal here, a corrected final judgment, was signed on January 23, 2002.

ISSUES

Appellant presents four issues for our consideration: (1) a challenge to the affidavits Elrod and Fletcher submitted as part of their summary judgment evidence; (2) that the court erred in holding there were no genuine questions of fact on her malicious prosecution claims; (3) that it erred in holding there were no genuine questions of fact on her federal claims under Title 42, Section 1983 of the United States Code; and (4) that the court's judgment cannot be supported on the basis of immunity.

The City has submitted a brief presenting three arguments supporting summary judgment for it on appellant's Section 1983 claims. Elrod and Fletcher have filed a joint brief arguing the record establishes there are no genuine questions of fact on appellant's malicious prosecution claims or her Section 1983 claims. They also argue the judgment is supportable on the basis of official immunity and qualified immunity.

4

## STANDARD OF REVIEW

The standards we must apply in reviewing a summary judgment are so well established that a detailed recitation of those standards is unnecessary here. It is sufficient to note that a movant bears the burden to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d at 546, 548 (Tex. 1985). We must take evidence favorable to the non-movant as true and indulge in every reasonable inference in favor of the non-movant. *Id.*

Rule of Civil Procedure 166a(i) allows a party to seek summary judgment on the basis that there is no evidence supporting an essential element of a claim or defense on which the opposing party has the burden of proof. Because a no-evidence summary judgment is essentially the same as a pretrial directed verdict, we apply the same legal sufficiency standard to both. *King Ranch, Inc. v. Chapman,* 46 Tex.Sup.Ct.J. 1093 (2003). The proper inquiry is whether the non-movant produced any probative evidence to raise a material fact issue. There is no evidence when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* If the non-movant presents more than a scintilla of probative evidence to raise a genuine material fact issue, summary judgment should not have been granted. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More

5

than a scintilla of evidence exists when the evidence rises to a level such that reasonable and fair-minded people could differ in their conclusions. *Id.*

COMMON LAW MALICIOUS PROSECUTION

We begin with appellant's second issue, which assigns error to the trial court's finding that Elrod and Fletcher were entitled to summary judgment on her claims for malicious prosecution. The parties agree that the opinion in *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515 (Tex. 1997), correctly sets out the elements of a claim for malicious prosecution. The elements are: the initiation of a criminal prosecution against the plaintiff; by the actions of the defendant; termination of that prosecution in the plaintiff's favor; the plaintiff's innocence; the absence of probable cause for the prosecution; malice in initiating the prosecution; and damage to the plaintiff. *Id.* at 517. Elrod and Fletcher's no-evidence motions for summary judgment asserted there is no evidence on the elements of lack of probable cause and malice.

In *Richey*, the court reaffirmed the definition of probable cause in the malicious prosecution context as "the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted." *Id.* at 517 (quoting from *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983)). Restated, the probable-cause determination asks whether a reasonable person would

believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be. *Id.*

Malice is defined as ill will, evil motive, gross indifference, or reckless disregard of the rights of others. *King v. Graham*, 47 S.W.3d 595, 608 (Tex.App.--San Antonio 2001, no pet.). It may be established by direct or circumstantial evidence. *Thrift v. Hubbard*, 974 S.W.2d 70, 80 (Tex.App.--San Antonio 1998, pet. denied). Appellant cites *Bass v. Metzger*, 569 S.W.2d 917 (Tex.Civ.App.–Corpus Christi 1978, writ ref'd n.r.e.), for the proposition that malice can be inferred from the initiation of a prosecution without probable cause. *See also King*, 47 S.W.3d at 608. Fletcher and Elrod counter that *Biering v. First National Bank*, 7 S.W. 90 (Tex. 1888), held the "two elements are distinct." In *Biering*, the court actually held that lack of probable cause could not be inferred from proof of malice, *Id.* at 92, but noted that malice *may* be inferred from proof that there was no probable cause. *Id.*

With respect to probable cause, a malicious prosecution case begins with the presumption that the defendant has acted reasonably and in good faith and had probable cause to initiate the prosecution. *Richey*, 952 S.W.2d at 517; *Akin*, 661 S.W.2d at 920. The plaintiff's initial burden on that element is to produce evidence that "the motives, grounds, beliefs, and other evidence" on which the defendant acted did not constitute probable cause. *Id*. Faced with Fletcher and Elrod's no-evidence motion for summary judgment on the absence of probable cause element, then, appellant was required to point out evidence to rebut that initial presumption. Significantly, although appellant argues the general

7

proposition that probable cause was lacking for her prosecution pursuant to the two complaints, she does not expressly assert that Fletcher or Elrod did not act on the basis of the flyer Fletcher found on his windshield, nor does she expressly challenge the sufficiency of the flyer to constitute probable cause for either complaint.[1]

With regard to the prosecution for distributing or scattering handbills, appellant argues that the complaint was not based on eyewitness evidence that she placed the flyers on cars. However she does not explain, nor does it appear to us, how the absence of an eyewitness is evidence of the lack of probable cause. Having carefully examined the summary judgment record, we find no evidence to support this element of appellant's claims for malicious prosecution arising from the handbill prosecution.

With regard to the prosecution for the zoning violation, appellant relies on a portion of Elrod's deposition testimony as evidence that the prosecution was brought without probable cause. The deposition testimony at issue consists of the following passage:

Question: Did you ever obtain a search warrant at any time to go to the Gunnels' home after you filed that complaint?

Elrod: In incidents like this, it's kind of hard to obtain a search warrant.

Question: Why is that, sir?

---

[1]The handbill ordinance declared it unlawful to "distribute or scatter any kind of literature, circulars, handbills or any kind of advertisements or loose paper upon the streets of the city." It is uncontroverted in this litigation that the flyer was an advertisement governed by the ordinance.

8

> Elrod: Because you don't know what is in there and you don't have proof of what is in there, totally. All you've got is guessing and suspicious [sic]. And the flier that she put out led to suspicious [sic] that there was, and that's not grounds for – my understanding, is not grounds for a search warrant.

The gist of appellant's argument is that Elrod's statement is an admission he had only a suspicion that appellant had violated the zoning ordinance and therefore did not have probable cause to file the complaint alleging she did so.

We cannot agree that Elrod's response to the question why it's hard "in incidents like this" to obtain a search warrant amounts to such an admission, nor do we see his statement as evidence of the absence of probable cause. To begin with, the first question in the quoted exchange inquired of Elrod whether he had obtained a search warrant after he filed the complaint. Events occurring after Elrod filed the complaint are not relevant to the issue of his probable cause to initiate the prosecution of appellant. *Akin*, 661 S.W.2d at 920 ("It is the events prior to the institution of the proceedings which must be examined, and only those events, to determine if the defendants had probable cause to act.")

Assuming, though, we can infer that Elrod's response to the second question reflects his beliefs about the availability of a search warrant at the time he filed the complaint, we still cannot give his statement the significance appellant attributes to it. In its context, Elrod's statement, reflecting his legal conclusion that he would not have been able to obtain a search warrant because it would have been based on "guessing and suspicions," would not lead a fair-minded person to conclude either that he subjectively did not believe appellant was operating a flower shop in violation of the ordinance or that

9

his belief was not objectively reasonable. *See Richey*, 952 S.W.2d at 518-19. His response to the question does not, as appellant urges, amount to an admission by Elrod that he had only a suspicion appellant was operating a flower shop in her home, and even viewed in the light most favorable to appellant, it represents no more than a scintilla of evidence that probable cause was lacking.

Appellant also emphasizes what she sees as a contradiction between Elrod's testimony on deposition that he performed no investigation before making the determination that appellant was operating a business in violation of the zoning ordinance and his statement in his affidavit that he "confirmed by his own investigative efforts" that appellant occupied the single-family residence at 1415 East Broadway. Again, though, in context, the contradiction fades. At deposition, Elrod was asked, "Did you go out and do any investigation before you made [the determination that appellant was violating the ordinance]?" After his negative response, he was asked, "No phone calls, no physical drive-bys, call, talk to her, or anything?" He again gave a negative response. The responses do not contradict Elrod's statement in his affidavit. The differences between the responses and the affidavit do not raise a genuine issue of material fact concerning the presence of probable cause.

Appellant has further asserted that there are such inconsistencies and conflicts between the evidence given by Elrod and that given by Fletcher, and between the statements made by each in his deposition testimony and those contained in his affidavit as to raise a fact issue concerning the lack of probable cause. Having reviewed the

deposition testimony that was before the trial court and the affidavits of both defendants, we do not find inconsistencies or conflicts in the summary judgment evidence sufficient to raise a genuine issue of material fact concerning the probable cause element.

Appellant's only argument addressing summary judgment for Fletcher on the lack of probable cause element appears to be that Fletcher did not conduct any investigation beyond the flyer itself. We cannot agree that is evidence he lacked probable cause. Again, appellant does not contend that the information in the flyer was insufficient to meet the standard for probable cause set out in case law.

Because the summary judgment record supports a finding that there is no evidence supporting an essential element of appellant's claims for malicious prosecution, that of the absence of probable cause for the prosecution, the trial court did not err in granting Fletcher and Elrod summary judgment on those claims. Tex.R.Civ.Proc. 166a(i) (summary judgment is proper when there is no evidence of "one or more essential elements.") We overrule appellant's second issue.

SECTION 1983 CLAIMS

We turn next to appellant's third issue, in which she asserts that the trial court's grant of summary judgment on her claims for deprivation of civil rights asserted under Section 1983 was error. Those claims, asserted against the City, Elrod and Fletcher, contended that pursuit of the two charges against her constituted both malicious

11

prosecution in violation of her Fourth Amendment rights and selective prosecution in violation of her right to equal protection of the law under the Fourteenth Amendment.[2]

Section 1983 provides a civil cause of action against any person acting under color of state law who deprives another of a right protected by the federal constitution or laws. The U. S. Supreme Court has held that a municipality is a "person" under the statute, but its liability must be based on its own conduct, and cannot be vicarious arising from conduct of its employees. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability for deprivations of constitutional rights must flow from an established policy or custom of the municipality. *Leatherman v. Tarrant Co. Narcotics Intelligence Unit*, 507 U.S. 163, 166, 122 L.Ed.2d 517, 113 S.Ct. 1160 (1993).

Appellant does not allege that her prosecution was pursuant to a formal policy of the City. An official policy for which a municipality may be liable need not be a formally adopted one. Official policy can also be established by evidence of:

> A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

---

[2]*See generally Lansdale v. Tyler Junior College*, 470 F.2d 659 (5th Cir. 1972) (affirming injunction under Section 1983 for deprivation of equal protection); *Izen v. Catalina*, 256 F.3d 324, 327-28 (5th Cir. 2001) (applying Fourth Amendment right to be free from malicious prosecution). The City has not challenged the trial court's failure to grant its special exceptions so we assume, *arguendo,* that appellant's petition is sufficient to state a cause of action against it under Rule of Civil Procedure 47.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).

The official policy appellant seeks to establish was that the city attorney would try all cases filed in municipal court regardless of the merits of the case. As evidence of this policy, she cites the deposition testimony of the city attorney, William McGowan, that he did not consider dismissing the complaints against appellant, even after one trial resulted in a hung jury, and his testimony that he tried all cases, "win, lose or draw."

Appellant characterizes this testimony as evidence that the city attorney tries all cases "regardless of his chances of success." Based on this characterization of McGowan's testimony, and the statutory provision that it is the duty of prosecutors, "not to convict, but to see that justice is done," Tex.Code Crim.Proc. Art. 2.01 (Vernon Supp. 2003), appellant argues this is evidence of "the type of 'serious incompetence'"[3] for which the remedy created by Section 1983 was established.

Although appellant points to no evidence that the governing body of the City of Brownfield, or any official to whom the City had delegated policy-making authority, had knowledge of the city attorney's policy, nor to any evidence that the City's governing body had delegated policy-making authority to the city attorney, for purposes of this discussion we will assume here, *arguendo*, that the city attorney is the type of policy-maker whose decisions and practices with respect to trial of cases in municipal court can be said to be the actions of the City of Brownfield. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 106

---

[3]This language is drawn from appellant's brief.

13

S.Ct. 1292, 89 L.Ed.2d 452 (1986). Appellant asserts that, by virtue of the city attorney's long tenure, the practice of trying all cases was so persistent and widespread as to fairly represent municipal policy. Appellant states in her brief that the city attorney has maintained the policy "for his entire tenure of over twenty years." Although we see no evidence in the record before us to support the statement,[4] again, for purposes of this discussion we will assume, *arguendo,* that there is summary judgment evidence of a policy of the City to prosecute all municipal court cases to trial.

Even assuming the existence of such a policy, however, it did not give rise to a violation of appellant's constitutional rights. To the degree that appellant contends that the city attorney's testimony is evidence that she was prosecuted maliciously, the

---

[4]Because of the emphasis appellant places on the city attorney's testimony, we reproduce the following exchange from his deposition testimony:

Q: Was there any consideration after you heard what they told you and the evidence you had of suggesting a dismissal in this matter, one or more of them, or not trying it?
A: No. I try all. [. . .] I try all cases. Win, lose or draw. . . .
Q: Yes, sir. Through your term as City Attorney? There was no additional evidence sought or obtained prior to your going to trial that morning?
A: I don't remember.
Q: What was the ultimate outcome of your first jury trial on these first two complaints?
A: I think she was found not guilty of the littering[,] and the jury hung on the business.
Q: Okay. And was a decision made if at all about whether to retry the hung jury complaint?
A: There never was a real question in my mind that it's still a complaint, and I'm going to try it.
Q: Okay.
A: I think that it's my duty, that was my duty as the City attorney was to present [the case].

contention must fail. "Malicious prosecution can be a constitutional violation . . . only if all its common law elements are established." *Castellano v. Fragozo*, 311 F.3d 689, 698-99 (5th Cir. 2002), citing *Izen*, 256 F.3d at 327. The elements of the constitutional tort of malicious prosecution under Section 1983 are the same as those under state law. To establish her malicious prosecution claim against the City under Section 1983, therefore, appellant must establish the same elements as are required for her malicious prosecution claims against Elrod and Fletcher under Texas law. *Castellano*, 311 F.3d at 699. We previously have concluded that appellant has pointed out no evidence that Elrod and Fletcher lacked probable cause for their initiation of appellant's prosecution. Nor is the city attorney's policy evidence of a lack of probable cause for appellant's prosecution.

Appellant asserts that the City policy was to try all municipal court cases filed "despite the merits of the particular case." She further describes the practice as one of prosecuting all cases to trial "regardless of the facts or lack of probable cause," in violation of the prosecutor's duty under the Code of Criminal Procedure. But the city attorney did not testify that he tried cases in which the facts did not support prosecution or in which probable cause was lacking. Nor does appellant cite us to other summary judgment evidence supporting such a conclusion. We are not pointed to evidence of the nature or number of other cases the city attorney has taken to trial, the evidence presented in such cases, or their outcomes. On this record, the city attorney's testimony falls considerably short of evidence of a City custom, practice or policy of prosecuting municipal court cases without probable cause.

15

Because, as noted, appellant was required to establish the same elements for her Section 1983 malicious prosecution claims against Elrod and Fletcher as for her common-law malicious prosecution claims against them, *Castellano*, 311 F.3d at 699, our conclusion that appellant has pointed out no evidence of the lack of probable cause for her prosecution disposes of her Section 1983 claims against them as well. *Richey*, 952 S.W. 2d at 517. The trial court's grant of summary judgment on appellant's Section 1983 malicious prosecution claims was not error.

Appellant focuses her Section 1983 claims alleging deprivation of equal protection of the law through selective prosecution on the actions of Fletcher and Elrod. As with any equal protection claim, to succeed appellant must demonstrate first that she and another person or class were similarly situated,[5] and secondly, that she was treated differently. *Beeler v. Rounsavall*, 328 F.3d 813 (5th Cir. 2003).

With regard to the handbill prosecution, appellant argues she is similarly situated to businesses that had advertised with flyers placed on cars. The summary judgment record contains evidence that three retail businesses had engaged in such advertising, but each had been warned that the practice violated a city ordinance rather than being prosecuted. Fletcher and Elrod seek to distinguish those instances on the basis that those businesses were located in commercially zoned districts. This distinction may be relevant

---

[5]The parties do not cite any authority discussing whether the determination that a plaintiff asserting disparate treatment is similarly situated to others is a question of fact or law. They implicitly view the question as one of fact and we will analyze the issues presented on that basis.

in considering whether there was a basis for disparate treatment but, because the ordinance does not recognize this distinction, we find there is summary judgment evidence that appellant and the other three businesses were similarly situated under the ordinance.

With regard to the zoning prosecution, appellant contends she is similarly situated to city residents who conduct garage sales in a residential district, and others who conduct businesses from their homes, including Fletcher and Elrod. She argues that her sales were indistinguishable from garage sales because both are periodic or irregular rather than continuous. However, she does not identify any summary judgment evidence supporting the assertion that her sales were not continuous. The only relevant evidence appears to be the limited period for which the prices on the flyer were valid and the language of the flyer referring to the annual school homecoming event. Indulging reasonable inferences in her favor, we cannot say, though, that there is no evidence appellant's activities were similar to garage sales.

The evidence of business conducted in Fletcher's home was that his wife had baked and sold cakes. Fletcher points to evidence that this business activity involved only a few sales, none of them in recent years. There was also evidence that Elrod sells ammunition reloaded in his home. He relies on evidence that the ammunition was not sold at the house and he did not advertise. Finally, there was also summary judgment evidence that Elrod's wife and daughters operated a "radio telephone answering service" from their home. Appellees' brief does not offer any distinction between that activity and appellant's. Again, indulging reasonable inferences in her favor, the summary judgment evidence does

17

not conclusively establish that appellant was not similarly situated to others who conducted commercial activities in residential districts. There is no evidence of other municipal court prosecutions under the zoning ordinance.

The mere failure to prosecute others similarly situated, though, is not sufficient to show selective prosecution violative of equal protection. *U.S. v. Greene,* 697 F.2d 1229, 1234 (5th Cir. 1983), *cert. denied,* 463 U.S. 1210 (1983)*; Roise v. State*, 7 S.W.3d 225, 243 (Tex.App.--Austin 1999, pet. ref'd). To establish her claim of selective prosecution, appellant must further establish that her different treatment was invidious, that is, motivated by improper considerations such as race, religion, the interference with exercise of a constitutional right, or other arbitrary classification. *Beeler,* 328 F.3d at 817*, see also Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)*; Greene,* 697 F.2d at 1234. To avoid summary judgment appellant must show a genuine question of fact on whether Elrod and Fletcher's decision to prosecute was deliberately based on such an unjustifiable standard. *See Oyler*, 368 U.S. at 456 (selective enforcement violative of equal protection is that "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification.")

We disagree with Fletcher and Elrod's contention that appellant must show the decision to prosecute was based on race, religion, or exercise of constitutional rights. That contention is based on a statement in *Greene*, 697 F.2d at 1234, listing those as impermissible considerations in the decision to prosecute. However those factors are not exclusive. As noted, in *Beeler* the Fifth Circuit recognized a claim of selective prosecution

18

can be based on an "arbitrary classification." 328 F.3d at 817. *See also, e.g., Hayden v. Grayson*, 134 F.3d 449, 453 n.3 (1ˢᵗ Cir. 1998), citing *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

But appellant fails to cite any evidence that the decision to prosecute her in either case was based on such an impermissible ground. Her first amended petition alleged the prosecutions were motivated by the exercise of first amendment rights by her and her father. Appellant refers us to no evidence in the record supporting that pleading and she does not present that argument on appeal. Her assertions that others engaging in similar practices were not prosecuted and that others were let off with a warning are simply restatements of the argument that she has been treated differently.

Taking appellant's contention that she is the only person who has been prosecuted for violations of these ordinances as true for purposes of this summary judgment analysis, that fact may establish that appellant has been treated differently, but it is not evidence that she has been treated differently for an impermissible reason. Nor is the failure of Elrod and Fletcher to conduct any investigation beyond the flyer such evidence, nor is the presence of Elrod's and Fletcher's names among those who have not been prosecuted for commercial activity in residential areas.

The record supports a finding that there is no summary judgment evidence that any differential treatment of appellant in enforcement of the city ordinances was invidious in that it arose from an arbitrary or otherwise impermissible classification. *See Greene*, 697

F.2d at 1234. Because of the absence of any evidence on an indispensable element of appellant's claims for selective prosecution, the trial court did not err in granting summary judgment for Fletcher and Elrod on those claims.

Nor does the record contain evidence of a City policy giving rise to a claim that appellant was selectively prosecuted. As noted, the official policy on which appellant relies for her Section 1983 claims against the City is the city attorney's policy of bringing to trial all municipal court cases presented to him for prosecution. Such a policy cannot form the basis for a selective prosecution claim against the City. The existence of such a policy obviously does not support a contention that the city attorney's actions in taking appellant to trial on the complaints against her were "selective" or had the effect of treating her differently than others similarly situated. To the contrary, if the city attorney's testimony represents City policy, appellant was treated like others who were cited by complaint. Moreover, appellant points to no evidence that any action taken pursuant to the city attorney's policy was taken because of an arbitrary or otherwise impermissible classification of her. We find the trial court properly granted summary judgment for the City of Brownfield on appellant's selective prosecution claims against it.

Having concluded that the trial court did not err in granting summary judgment on appellant's Section 1983 claims against appellees, we overrule appellant's third issue.

CONCLUSION

Our dispositions of appellant's second and third issues are dispositive of her claims against appellees. Except to the degree that we have considered and rejected appellant's assertions that the affidavits of Elrod and Fletcher created material questions of fact, we need not address her first issue, nor need we address her fourth issue challenging appellees' entitlement to summary judgment on the basis of immunity. The judgment of the trial court is affirmed.

James T. Campbell
Justice