DUVAL, District Judge:
This legal saga began eighteen years ago. The central issues in this suit for malicious prosecution under 42 U.S.C. § 1983 are: (1) whether the jury instructions constituted reversible error, (2) whether there was sufficient evidence to support the jury’s verdict in favor of the plaintiff, and (3) whether there was sufficient evidence to support the award of both economic and compensatory damages. The trial court affirmed the jury’s verdict in all respects. For the following reasons, we AFFIRM.

I. Background Facts

A. Castellano’s Arrest and Criminal Trial for Arson

Alfred Castellano (“Castellano”) is the owner of Fred’s Fish 'Fry (“Fred’s”), a *692 collection of fast food restaurants in San Antonio, Texas, which he and his father started in 1963. On October 31, 1984, one of Fred’s restaurants (“Fred’s No. 7”) was destroyed by fire. After investigation, the San Antonio fire department concluded that the fire had been the result of an “inside arson.” That conclusion was based, initially, on evidence gathered at the scene of the fire by Alfred Castro (“Castro”), a San Antonio arson investigator (and former defendant in this action), which included jars of gasoline, a disconnected natural gas line from the water heater, and two wrenches found inside Fred’s No. 7. Castro’s initial opinion was later confirmed by allegations made and evidence produced by Maria Sanchez (“Sanchez”),[2] a former Fred’s employee, and Chris Fragozo (“Fragozo”),[3] a San Antonio police officer who worked off-duty as a security officer for Fred’s, consisting of: (1) tapes of conversations allegedly held between Sanchez and Castellano wherein Castellano implicated himself in the arson of Fred’s No. 7 and (2) Sanchez’s sworn testimony that Castellano had tried on previous occasions to burn the restaurant. With that evidence, Castro concluded that there was probable cause to believe Castellano was responsible for the fire.
On November 8, 1984, Castellano was arrested, at his office, for committing arson on Fred’s No. 7. After entering his place of business, the police immediately grabbed Castellano, placed him in handcuffs, searched his person and office, and took him to the police station. Thereafter, Castellano remained handcuffed and was seated in a room while he waited to be fingerprinted. When the press arrived, the police left Castellano in handcuffs while they slowly paraded him through the crowd of reporters towards the front door. Throughout this ordeal, Castellano was not given the opportunity to call his family or business associates to warn them of the allegations before the story appeared on the evening news.
At the time of his arrest, Castellano was a respected business man, was serving on the Fire and Police Civil Service Commission, and was active in community polities. Following his arrest, however, he was asked to resign his position on the Commission. The story and its permutations intermittently appeared on the evening news and in the newspaper for a over a year.
At his criminal trial, the evidence implicating Castellano in the arson was, for the most part, twofold. First, there was the testimony of Sanchez who testified that: (1) in the days before the fire, Castellano confided in her that he intended to burn Fred’s No. 7 and that he attempted to burn the restaurant on prior occasions; (2) Castellano instructed her to purchase Halloween items for the restaurants — specifying that there should be a candle in Fred’s No. 7; and (3) she related Castellano’s plan to burn Fred’s No. 7 to Fragozo, who suggested that she tape record her conversations with Castellano so she would not be blamed for the fire. Those recorded conversations, containing statements allegedly made by Castellano implicating himself in the arson and other arson attempts, *693 were admitted as evidence of Castellano’s guilt. Also introduced as evidence was the fact that, at the time of the arson, Fred’s No. 7 was operating at a loss and Castella-no had recently increased his insurance on the restaurant:
Castellano vehemently denied the accuracy of the tape and claimed that Sanchez and Fragozo altered the tapes in an act of revenge. He also introduced an expert witness who testified that the tape was a fraud — created by manipulating conversations between Sanchez and Castellano.
At the conclusion of the criminal trial, the jury convicted Castellano of arson and he was sentenced to five years probation. He subsequently filed three writs of habe-as corpus — the third of which was granted by the Texas Criminal Court of Appeals. At the writ hearing, the court heard un-contradicted testimony from Clemencia Jiminez (“Jimenez”), an employee of Fred’s that: (1) Sanchez told her, before Castellano’s conviction, about the plan to tape record Sanchez’s conversations with Castellano and alter them to implicate him in the arson and asked her to corroborate Sanchez’s story with the district attorney; (2) after Castellano’s conviction, Sanchez told her she “had gotten” Castellano without her help; and (3) Fragozo attempted to enlist her as a witness against Castella-no.[4]
The findings of fact issued by the habeas judge following the hearing were adopted by the Texas Criminal Court of Appeals, and included Finding of Fact No. 3 that Fragozo “attempted to enlist Clemencia Jiminez as a witness against [Castellano] and aided Maria Sanchez in altering the tape recordings offered into evidence. The tapes were altered to appear that [Castellano] was admitting to the arson when in fact he had ho knowledge of its commission” and Finding of Fact No. 6 that - “Sanchez and Fragozo collaborated together and without their testimony and the altered tapes, there is insufficient evidence to sustain a finding of guilt in this case.”[5]
Castellano’s conviction was overturned and his case was remanded for a new trial in 1993. On remand, however, the district attorney dismissed the case for “lack of evidence” and Castellano’s record was later expunged.

B. Civil Suit for Malicious Prosecution

On September 23, 1994, Castellano filed the instant civil action in the District Court of the 288th Judicial District, Bexar County Texas for malicious prosecution under 42 U.S.C. § 1983 against Fragozo, individually and in his capacity as a San Antonio Police Officer, Sanchez, Castro, and others. Castellano claimed that the defendants maliciously prosecuted him in violation of his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights and contended that he had suffered a myriad of damages, including injury to his feelings, reputation, mental health, and character. Castellano also complained that he had been “severely impaired in his social and mercantile standing” and continued to suffer great embarrassment, humiliation, and anguish. Finally, Castellano asserted that his business had lost clientele, profits, and good standing as a direct and proximate result of the criminal prosecution.
The case was subsequently removed to federal court where it was referred to a magistrate judge. Thereafter, on Sanchez’s motion for summary judgment, the court dismissed Castellano’s malicious prosecution claims based on the Fifth, *694 Sixth, Eighth, and Fourteenth Amendments. Relying on Albright v. Oliver[6] and Johnson v. Louisiana Department of Agriculture,[7] however, the court sustained Castellano’s malicious prosecution claims based on alleged violations of his First and Fourth Amendment rights. The court also determined that Castellano’s third amended complaint contained sufficient allegations to support his malicious prosecution claim under the Fourth Amendment.[8]
The trial was held in April of 2000. As to his individual damages, Castellano testified that he: (1) was embarrassed from the exposure his case received in the media— even after his conviction was overturned, (2) was asked to resign from his civil service position, (3) was unable to obtain loans to expand his business, and (4) was denied coverage for fire insurance. Castellano also stated that at the time of the fire, he was attempting to franchise his business. He had started a construction company, developed a concept of constructing inexpensive prefabricated buildings, and expended resources hiring legal counsel, preparing literature, and obtaining a license in California. However, Castellano explained that since his conviction for arson, he had been unable to franchise his business and stated that his personal losses stemming therefrom “could have been in the millions.”
Also testifying at trial was Castellano’s .economist, Gene Trevino (“Trevino”), who opined as to the measure of damages Cas-tellano suffered, individually, as a result of his failure to franchise his business after the arson conviction.[9] Specifically, Trevino testified that Castellano’s personal economic loss as a result of his inability to franchise his business was $1,200,000. He further explained that this amount was based on the assumption that Fred’s would have been able to franchise at a rate of one restaurant a year for twelve years and, as such, Castellano could have increased his personal salary by an additional $100,000 per year for each of those years.[10]
Jiminez and Louis Cantu (“Cantu”), both employees of Fred’s, also testified at the trial. Jiminez testified that (1) Sanchez and Fragozo attempted to enlist her to “be on their side” during the criminal trial and testify against Castellano and (2) after Castellano’s conviction Sanchez stated that she had “done what she set out to do.” Cantu testified, inter alia, that Fragozo and Castro had come to his home, ordered him into Fragozo’s car, and attempted to persuade him to alter the statement he had given previously to the police so as to implicate Castellano in the arson of Fred’s. Cantu further explained that Fragozo pointed a gun at him when he refused to change his statement as they requested.
*695 At the close of - Castellano’s case, Sanchez, Fragozo, and Castro each moved for judgment as a matter of law (“JMOL”) under Federal Rule of. Civil Procedure 50(a), arguing, in part, that the law surrounding § 1983 malicious prosecution claims was unsettled.[11] In her Rule 50(a) motion, Sanchez also argued that (1) Cas-tellano had not proved a “lack of probable cause” with respect to the criminal proceedings or her actions, (2) Castellano’s complaint did not specify that he was seeking personal damages derivative from his business losses after his conviction, and (3) there was insufficient evidence that she conspired with Castro or Fragozo. Frago-zo argued that there was insufficient evidence to prove that his actions were not objectively reasonable for purposes of qualified immunity. Both motions were denied.
At the close of all the evidence, but before the case went to the jury, the defendants renewed their JMOL motions for the same reasons articulated at the close of Castellano’s case. The motions were denied.
Thereafter, the jury instructions and interrogatories were presented to the magistrate judge and discussed at a charge conference before they were read to the jury. At that time, no one objected to the instructions or interrogatories as they related to “malicious prosecution.”
Following its general jury instructions as to the types of evidence, credibility of witnesses, burdens of proof, etc., the court provided the following charge for “malicious prosecution”:
... Castellano claims that Alfred Castro and Chris Fragozo, while acting under color of law, intentionally violated his
constitutional right to due process by maliciously prosecuting him for the criminal offense of arson. Castellano further claims that Maria Sanchez, as an individual, intentionally violated the same constitutional right.
To prove such violation, Castellano must prove each of the following by a preponderance of the evidence: One, the defendants intentionally committed the acts that deprived him of due process; two, in so doing, the defendants acted under “color of law” of the State of Texas; and three the defendants’ acts caused his damages.
First, to prove the defendants intentionally committed acts depriving him of due process, Castellano must prove they maliciously prosecuted him for the criminal offense of arson. To prove this claim, Castellano must establish by a preponderance of the evidence each of the following:
One, the defendants caused or commenced or aided a criminal proceeding against him;
Two, the defendants acted without probable cause;
Three, the criminal action terminated in his favor;
Four, he was innocent of arson;
Five, the defendants acted with malice by prosecuting him for arson;
And six, he was damaged by the criminal proceeding.
To determine whether Maria Sanchez committed malicious prosecution you must also determine whether she conspired with another while the other was *696 acting under color of law, and they conspired with the intent to commit malicious prosecution....
In instructing the jury as to the potential damages that they could award, the court explained:
If you find that Castellano was maliciously prosecuted by any of the defendants, then you must determine an amount that is fair compensation for all of Castellano’s damages. The purpose of these compensatory damages is to make Castellano whole — that is, to compensate Castellano for the damage that Castellano has suffered. Compensatory damages are not limited to just out-of-pocket expenses that Castellano may have incurred because of his injury. You may award damages for any injury that Castellano sustained, including any mental anguish, loss of earning potential, and/or loss of capacity for enjoyment of life that Castellano has experienced in the past. However, Cas-tellano’s compensatory damages may not include actual damages to Fred’s Fish Fry, Inc. as a result of the fire or any malicious prosecution. Castellano’s damages in relation to Fred’s Fish Fry may only include his own damages you find resulted from any damages to Fred’s Fish Fry, Inc. as a consequence of any of the defendants’ malicious prosecution.
If the plaintiff has proved that the defendants acted with malice or willfulness or with callous and reckless indifference to the safety or rights of others, you may also award punitive damages against them.... The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. However, the amount can be as large as you believe necessary to fulfill the purposes of punitive damages. Similarly, the jury interrogatories directed the jury to consider whether, by a preponderance of the evidence, the defendants deprived Castellano of his “constitutional rights by committing malicious prosecution” as defined in the court’s instruction. As to damages, the jury interrogatories queried:
Interrogatory No. 4:
What sum of money will fairly and reasonably compensate Castellano for his actual damages, if any, that he proved were the cause-in-fact and proximate cause of the defendants’ violation of his constitutional rights? Provide the amount, if any in dollars and cents.
Interrogatory No. 5.:
Do you find from a preponderance of the evidence that the listed defendants acted" with malice or wilfulness or with callous and reckless indifference to the rights of Castellano, as defined in the court’s instruction?
And, Interrogatory No. 6:
What sum of money will fairly and reasonably compensate the plaintiff for his punitive damages, if any, that he proved resulted from the violation of his constitutional rights by the listed defendants?
Damages were submitted globally to the jury.
On April 17, 2002, the jury rendered its verdict and found that Fragozo, but not Castro, had acted under color of law to deprive Castellano of his constitutional rights by committing malicious prosecution. As to Sanchez, the jury concluded that she had conspired with Fragozo, while he was acting under color of law, with the specific intent to deprive Castellano of his constitutional rights. Accordingly, the jury awarded $3,000,000 in compensatory damages and $500,000 in punitive dam *697 ages — to be divided evenly between Sanchez and Fragozo.

C. PosP-Trial Motions

Thereafter, Sanchez and Fragozo filed motions for judgment as a matter of law or, in the alternative, a new trial. Therein, they argued that: (1) there was no basis for a § 1983 malicious prosecution claim based on the Fourteenth Amendment; (2) Castellano had not pled a cause of action for malicious prosecution under the Fourth Amendment; (3) Castellano had not” proven the elements of the crime of malicious prosecution, including his “actual innocence” as to the arson charge and the lack of probable cause for his criminal prosecution; and (4) the court’s jury instruction as to malicious prosecution was erroneous because it suggested that Castellano’s cause of action arose under the Fourteenth Amendment-rather than the Fourth Amendment. Sanchez also posited that there was insufficient evidence to establish that she conspired with another individual acting under color of law with the specific intent to violate Castellano’s constitutional rights. Fragozo also contended that Casr tellano faded to prove that he acted with malice.
As to the damage award, Fragozo and Sanchez argued that: (1) Castellano was not entitled to receive individual damages that he sustained derivative from damages to his business after his conviction because his complaint was void of any such allegation, (2) the evidence supporting Castella-no’s request for damages for anticipated future lost profits or future compensation from the failure to franchise Fred’s ivas speculative, (3) they were unfairly surprised by Trevino’s testimony because his pre-trial report focused solely on corporate damages, (4) there was insufficient evidence to support a damage award for Castellano’s mental anguish under the principles set forth in Patterson v. PHP Healthcare Co.,[12] (5) the global jury instruction as to the compensatory and punitive damages was erronéous, and (6) the amount awarded was excessive.
The trial court denied defendants’ motions. As to defendants’ argument that there was no constitutional cause of action for malicious prosecution, the judge explained that there was no new evidence sufficient to persuade him to alter his prior ruling. Resolving defendants’ challenge to their liability for malicious prosecution under the Fourth Amendment,[13] the court determined that it could not overturn the jury’s verdict because (1) there was sufficient evidence to create an issue of fact as to each element of the crime and (2) the facts and evidence did not point so strongly and overwhelmingly in defendants’ favor.
With respect to the jury’s award for mental anguish damages, the court stated that under Patterson, Castellano’s testimony as to his mental anguish, without corroboration, was insufficient to support an award for mental anguish damages. However, the court reasoned that because defendants failed to assert this argument in their Rule 50(a) motion, it was barred from granting their post-trial motions on the issue.[14]
*698 The trial court also denied defendants’ motions for a new trial, specifically holding that: (1) the evidence of Castellano’s individual damages was not speculative and (2) the damage award was not shocking or inordinately large. The court also noted that because it rejected defendants’ challenges to the damage award, its global jury instruction was not erroneous. As to all other issues raised in the motion for a new trial, the court concluded that the verdict was not “against the great weight of the evidence.”

II. Discussion

On appeal, defendants Fragozo and Sanchez have raised the following issues for resolution: (1) whether there exists a cause of action for malicious prosecution for purposes of § 1983 under the Fourth Amendment and, if so, whether the trial court erred in concluding that Castellano had met and pled the prerequisites for such a cause of action; (2) whether the magistrate judge committed reversible error when he instructed the jury on the basis of Fourteenth Amendment “due process,” instead of Fourth Amendment “unreasonable seizure”; and (3) whether there was sufficient evidence before the jury (a) that Castellano had been maliciously prosecuted, (b) of a conspiracy between Sanchez and Fragozo, and (c) that, for qualified immunity purposes, Fragozo’s actions were objectively unreasonable.
Defendants have also challenged the damage award on the following fronts: (1) whether the trial court erred in denying their motion for a new trial as to the jury award for mental anguish damages; (2) whether the trial court erred in admitting Trevino’s testimony because defendants had not received proper notice of the substance of his testimony before trial or because it was speculative; (3) whether Cas-tellano’s complaint included a request for personal damages — derivative from the damages sustained by his business after his conviction; (4) whether the $3,000,000 compensatory damage award or the $500,000 punitive damage award was excessive; (5) whether the trial court erred in instructing the jury globally or in instructing the jury that it could consider “loss of capacity for enjoyment of life”; (6) whether criminal defense attorney fees are recoverable under § 1983 and § 1988; and (7) whether the trial court properly permitted Castellano’s criminal defense attorney to testify as to his fees without independent recollection, and relying on fee ledgers not produced upon request.
The court will address each issue in turn.

A. Malicious Prosecution Claim and its Prerequisites Under the Fourth Amendment

In Albright v. Oliver,[15] the Supreme Court held that a cause of action for malicious prosecution under the Fourteenth Amendment did not exist. However, the Court did not reach the issue of whether such a right exists under the Fourth Amendment and this circuit interpreted that void as having “left undisturbed our circuit’s longstanding recognition of a Fourth Amendment right to be free from malicious prosecution.”[16] Thus, this court has acknowledged that it has “long recognized a constitutional right under the Fourth Amendment ‘to be free from malicious prosecution.’ ”[17]
This court has further clarified that “malicious prosecution may be a constitu *699 tional violation ... only if all of its common law elements are established.”[18] Our most recent discussion of the tort of malicious prosecution held that the requirements of the state tort law and the constitutional tort are the same. In Gordy v. Bums, this court explained:
Unquestionably, state-law tort claims— such as the common-law tort of malicious prosecution — are not, by themselves, actionable under § 1983. Because § 1983 requires some showing that the plaintiff has been deprived of a federal right, but no constitutional provision specifically guarantees against the institution of groundless criminal prosecutions, a “malicious prosecution” claim under § 1983 is a misnomer. Nevertheless, the rule in this circuit is that the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of “Fourth Amendment malicious prosecution” are coextensive .... the rule is rooted firmly in Fifth Circuit precedent.[19]
Furthermore, the court noted that: ■
[A] plaintiff in a § 1983 malicious prosecution action need establish only the elements of common-law malicious prosecution. This circuit repeatedly has indicated — without explanation — that courts must look to the elements of a malicious prosecution claim under the law of the state where the offense was committed.[20]
Thus, by pleading a claim for malicious prosecution under the Fourth Amendment, a plaintiff pleads an actionable claim under § 1983. The reviewing court need only consider the elements of the tort of malicious prosecution as defined under the law of the relevant state to determine whether a plaintiff has established a claim of malicious prosecution.[21] Therefore, in the case at bar, Castellano was only required to satisfy the criteria for malicious prosecution under Texas law to successfully state a cause of action under § 1983 for a violation of his rights under the Fourth Amendment. Under Texas law, the elements for a cause of action for malicious prosecution are: (1) a criminal action commenced against the plaintiff; (2) the prosecution was caused by the defendants or with their aid; (3) the action terminated in plaintiffs favor; (4) the *700 plaintiff was innocent; (5) the defendants acted without probable cause; (6) the defendants acted with malice; and (7) the criminal proceeding damaged the plaintiff.[22]
Accordingly, the trial court did not err in finding that a § 1983 claim for malicious prosecution existed under the Fourth Amendment.

B. Sufficiency of Castellano’s Complaint to Assert a Cause of Action Under the Fourth Amendment

We now turn to defendants’ allegation that Castellano did not plead a cause of action for malicious prosecution under § 1983 for purposes of the Fourth Amendment. Defendants raised the identical issue in their motion for summary judgment before the trial court — wherein the court treated it as a motion to dismiss for failure to state a claim and determined that Castellano’s complaint contained sufficient facts to support his allegation that his Fourth Amendment rights had been violated. We explained in Bennett v. Pippin,
After a trial on the merits, the sufficiency of the allegations in the complaint is irrelevant.... When the plaintiff has prevailed after a full trial on the merits, a district court’s denial of a Rule 12(b)(6) dismissal becomes moot. The plaintiff has proved, not merely alleged, facts sufficient to support relief.[23]
Based on the rationale in Bennett this court will not address this issue.

C. Jury Instructions

Federal Rule of Civil Procedure 51 provides, “[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.”[24] However, this court has never held that a party’s failure to object to proposed jury instructions creates a jurisdictional bar to appellate review and has previously entertained tardy jury instruction objections under the plain error standard of review.[25]
Furthermore, in Tompkins v. Cyr, this court cautioned that, “[i]n reviewing jury instructions for plain error, we are exceedingly deferential to the trial court” and reiterated the justification behind such deference:
Few jury charges in cases of complexity will not yield “error” if pored over, long after the fact in the quiet of the library — if such an enterprise is to be allowed. It is not. The reality is that most such “errors” will be washed away if the trial court is given a fair opportunity to consider them. In short, so long as the trial judge gives counsel a fair opportunity to object, we will listen to unobjected to rulings only in those handful of cases that can meet the exacting requirements of plain error.... These rules vindicate powerful interests in orderliness and finality. They also reflect the central role of the United States District Court. If is not a way station or entry gate. Rather, trials are the heart of the system. Trial, not appeal, is the main event.[26]
*701 When the party challenging thp district court’s instructions has not objected to them before the district court, our consideration of the issue is limited to plain error review and requires proof: “(1) that an error occurred; (2) .that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would ‘seriously affect the fairness, integrity, or public reputation of judicial proceedings.’ ”[27] Further, this court has noted that “[a]n inadequate instruction merits reversal when ‘the charge as a whole leaves us with the substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.’ ”[28] Thus, for this court “[t]o overturn a verdict for plain error in the instructions, we must find an obviously incorrect statement of law that was ‘probably responsible for an incorrect verdict, leading to substantial injustice.’ ”[29]
Because defendants did not object to the trial court’s instructions pertaining to malicious prosecution before they were submitted to the jury, this court will review the instructions for plain error.[30] Clearly, the trial court erroneously instructed the jury that Castellano should prevail if the jury found that defendants violated Castellano’s “constitutional right to due process” by maliciously prosecuting him for the criminal offense of arson. Rather, the trial court should have directed the jury that Castellano should prevail only upon a showing that defendants violated Castellano’s Fourth Amendment right to be free from “unreasonable seizure.” Such an instruction would have been consistent with the court’s prior order holding that Castellano could maintain his cause of action for malicious prosecution only under the Fourth or First Amendments — not the Fourteenth Amendment.
However, having reviewed the jury instructions as a whole, this court cannot conceive how using the words “due process,” rather than “unreasonable seizure,” would have changed the jury’s verdict under the facts of this case. Thus, we conclude that the trial court’s error was not responsible for an “incorrect verdict, leading to substantial injustice.”[31]
The law of this circuit holds that in the event the elements of malicious prosecution are proved, a fortiori, a violation of the Fourth Amendment is also proved. In *702 the case at bar, although the judge never mentioned the “Fourteenth Amendment” in its instructions, it erroneously used the words “due process.” However, “due process” was defined as the common-law elements of malicious prosecution. Thus, during its deliberations, the jury had before it the appropriate standard required to find a violation of the Fourth Amendment. The jury applied that standard to the overwhelming evidence and found Sanchez and Fragozo liable. It is unlikely that the jury would have reached a different conclusion had the trial court used the words “unreasonable seizure” rather than “due process”-under either wording, the jury had to find that the elements of malicious prosecution were met.
Further, the record clearly shows that the parties, attorneys, court, and jury were keenly aware that if Castellano proved the elements of malicious prosecution, a constitutional right had been violated. Thus, this case hinged on the jury’s interpretation of the facts and the credibility of the witnesses as applied to the correct legal standard (the common-law elements of malicious prosecution). The impetus for the jury verdict was not the improper words “due process,” but whether the jury believed that Castellano was arrested, convicted, and sentenced as a result of Sanchez and Fragozo’s conspiracy. It is evident that the jury believed that the elements of malicious prosecution were met. The facts drove this case — not the misnomer of the constitutional provision in the jury instructions.[32]
Considering the jury instructions as a whole and applying the great deference that this court owes the trial court in reviewing jury instructions, we find that the trial court’s error did not result in an incorrect verdict leading to substantial injustice.

D. Sufficiency of Evidence of Malicious Prosecution under the Fourth Amendment

On appeal, defendants contend that there was insufficient evidence to support several of the elements of malicious prosecution.[33] The only element preserved by defendants in their pre-verdict JMOL motions, however, was the lack of “probable cause.” This court has repeatedly explained that to assert a claim in a Rule 50(b) motion, a party must have raised the issue at the close of the evidence in a Rule *703 50(a) motion.[34] When a party fails to comply with the Rule 50 procedural requirements, this court employs the “some evidence” standard of review.[35] Therefore, we need only determine whether there was any evidence presented at trial as proof of each of the other five elements of malicious prosecution.[36] Based on our review of the record, there is at least some evidence proving each of those elements.
As noted above, because Sanchez preserved her challenge concerning the existence of “probable cause,” this court will review the record to determine whether a reasonable jury could have arrived at the same conclusion the jury rendered.[37]
In the case at bar, the jury was presented with the following evidence: (1) testimony from Joe Hebert that the audio tape Castro received from Sanchez and Fragozo was fabricated, (2) Castellano’s unwavering assertion that he was innocent, and (3) Cantu’s testimony that Fragozo tried to intimidate him into altering his original story to the police in order to implicate Castellano in the arson. There was sufficient evidence for a reasonable jury to find that Sanchez and Fragozo acted without probable cause. It would be an abuse of this court’s discretion to hold otherwise.

E. Evidence of a Conspiracy between Sanchez and Fragozo

Defendants posit that there was insufficient evidence of a conspiracy to inculpate Sanchez, — who is not a § 1983 state actor. Because Sanchez properly preserved this issue in a pre-verdict JMOL, the court will review the record to consider whether a reasonable jury could have found that a conspiracy existed.
The elements of civil conspiracy are: (1) an actual violation of a right protected under § 1983, and (2) actions taken in concert by defendants with the specific intent to violate that right.[38] Further, for Sanchez to be liable under § 1983, there had to be proof that she conspired with Fragozo, who was acting under color of law, to violate Castellano’s Fourth Amendment rights.[39]
*704 On this issue, the jury was presented with evidence that (1) Fragozo, as police officer, provided the tape recorder so that Sanchez could record her conversations with Castellano; (2) the tape was subsequently altered; (3) upon Fragozo’s prompting, Sanchez turned the tape over to Castro; and (4) Sanchez and Fragozo attempted to get Jiminez on “their side” to support their story that Castellano had intentionally burned Fred’s No. 7. Having concluded that Castellano’s Fourth Amendment rights were violated, we similarly conclude that there was sufficient evidence before the jury for it to find that a conspiracy existed between Sanchez and Fragozo to deprive Castellano of those rights.

F. Qualified Immunity

In his JMOL motions at the close of Castellano’s case and at the close of all the evidence, Fragozo argued that there was insufficient evidence to support the jury’s finding that, for purposes of qualified immunity, his actions were not objectively reasonable. However, Fragozo did not raise this issue in his post-verdict motion. Thus, the standard of review to be applied on appeal, whether it be plain error or abuse of discretion, is uncertain. For example in Gaia Techs., Inc. v. Recycled Prods. Corp., we explained that “[w]e have never required a party to file a [post-verdict] Rule 50(b) motion in order to preserve its right to claim insufficiency of the evidence on appeal, so long as it has filed a Rule 50(a) motion at the close of all the evidence.”[40] However, in Colonial Penn. Insur. v. Market Planners Insur. Agency, Inc., we held that “[i]n a jury trial, of course, a party must make (and renew at the trial’s conclusion) a [post-verdict] a Rule 50(a) [JMOL] motion ... in order to preserve sufficiency of the evidence for appellate review.”[41]
Having reviewed the record, however, this court is satisfied that under either standard there was sufficient evidence for the jury to find that Fragozo’s actions were objectively unreasonable for purposes of qualified immunity.
If the trial court does not resolve the issue of qualified immunity before trial because facts about the official conduct are in dispute, it may be decided by the jury.[42] Thus, in determining whether an individual is entitled to qualified immunity, the jury must determine whether: (1) plaintiff alleged a violation of a clearly established constitutional right[43] and (2) the official’s conduct was objectively unreasonable under clearly established law existing at the time of the incident.[44]
In the case at bar, Castellano alleged a violation of his Fourth Amendment right to be free from malicious prosecution. At the time of the events at issue, the protection afforded by the Fourth Amendment to be free from unreasonable seizure was sufficiently clear so that a reasonable official would understand what he [Fragozo] was doing violate[d] that right.[45] Thus, any reasonable officer would have known that Fragozo’s actions in (1) encouraging a witness to fabricate *705 evidence and turn it over to an investigating officer and (2) intimidating another witness, for the purpose of creating probable cause to arrest an innocent individual, were unlawful. Given the above, the jury’s determination that Fragozo acted unreasonably, and thereby was not entitled to qualified immunity, is supported by sufficient evidence.

G. Damages

Having found the defendants liable, the jury awarded Castellano $3,000,000 in compensatory damages and $500,000 in punitive damages. We now turn our consideration to defendants’ objections to the damage award.

1. Castellano’s Mental Anguish Damages

In Patterson v. P.H.P. Healthcare Co.,[46] this court explained that in the context of a Title VII case, a plaintiffs testimony that he felt “frustrated” and “real bad” for being judged by the color of his skin and that his work environment was “unbearable” was insufficient to support anything more than a nominal damage award for emotional harm, absent corroborating testimony or expert medical or psychological evidence of damages caused by the alleged distress. This court has held that the testimony of a plaintiff, alone, can be sufficient to support an award of mental damages when it is particularized and extensive.[47] However, because neither defendant raised this issue in their Rule 50(a) motion, the court refused to “consider the issue” in the post verdict motions.
On appeal, defendants contend that the trial court abused its discretion in denying their motion for judgment as a matter of law or, in the alternative, a new trial as to Castellano’s mental anguish damage award because there was insufficient evidence on which the jury could base such an award under Patterson and its progeny.
As alluded to above, the standard of review employed to analyze a trial court’s denial of a judgment as a matter of law depends on whether the party complied with Rule 50(a).[48] When a party has properly moved for judgment as a matter of law at the conclusion of the evidence, this court reviews the record to determine the sufficiency of the evidence.[49] However, when a party has not properly moved for a judgment as a matter of law, this court reviews the record only to determine whether the record contains any evidence to support the trial judge’s decision.[50]
*706 This court has never demanded a “slavish” adherence to the Rule 50 “procedural sequence.” However, in cases in which we have strayed from its proscriptions, the divergence has been “de minimus” and the purposes of the rule, enabling the trial court to re-examine the sufficiency of the evidence as a matter of law and alerting the opposing party to the insufficiency of his case before being submitted to the jury, were accomplished.[51]
The facts of this case do not warrant an exception to Rule 50. Neither the trial court nor opposing counsel had any indication that defendants intended to challenge Castellano’s account of his mental anguish damages because they raised no objection during Castellano’s testimony, voiced no concern as to the sufficiency of the evidence during the jury charge, and did not mention this argument at the close of the case. Thus, we will review the record to determine whether there is any evidence of mental anguish to support the jury’s damage award.
Having reviewed the record, the court is satisfied that there is some evidence of Castellano’s mental anguish damages and will not disturb the jury verdict. During the trial, the jury learned that Castellano has dealt, for fifteen years, with the stigma of being convicted of an arson he did not commit in a community where he was once a prominent citizen. Castellano explained that since his conviction, his reputation has been ruined:[52]
People — in a situation like this, people don’t forget, and they still think you’re guilty, even though you’re not. You can explain to them all you want that it’s been expunged, I’m not guilty, it was a frame up. Tell them everything you want. But they still have it in their mind that you may be guilty.[53]
Further, Castellano stated that he was required to resign from his civil service position after his arrest — and was not reinstated after his record was expunged. He also explained that since his conviction, he has been unable to obtain fire insurance or financing for his business.
Castellano also described the details of his arrest and stated after he was taken from his business, he was forced to remain in handcuffs at the police station for a little over an hour at which point he heard Castro ask another officer whether “[l]os animales ya legaron” (have the animals arrived).[54] He stated that by “animales” Castro was referring to the press and explained that he was held in a back room until the press arrived. Thereafter, Cas-tellano was paraded slowly before the *707 press — in handcuffs. According to Castel-lano, the details of his case were intermittently reported as the lead story on the front page of the newspaper for over a year.
Castellano’s testimony was particularized, extensive, and compelling. Thus, under the plain error standard, the existence of evidence of Castellano’s mental anguish constrains this court from reversing the decision of the trial court.[55]

2. Trial Court’s Decision to Allow the Jury to Compensate Castellano’s Personal Damages Derivative from Damages Sustained by his Corporation

This court reviews a trial court’s eviden-tiary rulings for an abuse of discretion.[56]
Defendants first contend that under Federal Rule of Civil Procedure 9(g), Cas-tellano’s request for damages to compensate his individual losses derivative from his business, including lost wages in the form of executive compensation, should have been pled with specificity as a form of “special damages.”[57] Further, they argue that through his complaint Castellano only requested damages to compensate the corporation for its losses stemming from its inability to franchise — not for damages Castellano allegedly suffered personally. Thus, defendants urge this court to find that the trial court abused its discretion by overruling their objections to the jury’s consideration of such damages.
The Federal Rules of Civil Procedure require notice pleading[58] and defendants cite no Fifth Circuit jurisprudence to support their position that loss of earning potential must be pled with specificity. Castellano’s third amended complaint prayed for damages, in part, to compensate him for any impairment to his social and mercantile standing — which arguably includes the loss of earning potential. Defendants were also aware that after his arson conviction Castellano was unable to franchise his restaurant and, under the notice pleading standard, defendants should have been aware that, as the sole owner of the restaurant, Castellano would seek any damages he suffered derivative from his business losses. Additionally, these losses were mentioned in Castellano’s expert report. We find defendants’ argument that they were unaware that Castellano would be seeking damages to compensate his personal loss stemming from the economic damage to his corporation to be unpersuasive. Thus, we conclude that the trial court did not abuse its discretion in admitting evidence of Castellano’s lost wages in the form of executive compensation.

*708
3. Notice of Trevino’s Testimony as to Castellano’s Individual Damages

This court employs an abuse of discretion standard when reviewing a trial court’s decision on the admissibility of expert testimony.[59]
Defendants argued at trial that they were unaware that there would be expert testimony as to Castellano’s individual damages derivative from his inability to franchise his business-including lost wages in the form of executive compensation. The trial court disagreed and allowed Trevino to testify as to “the damages Castellano sustained personally as a result of this malicious prosecution, such as loss of income to him as a result of being unable to franchise Fred’s Fish Fry.”
However, defendants knew that Trevino would be called as an expert witness for Castellano because he was identified as such in all pre-trial material. Further, in the report prepared before trial and served on defendants, Trevino specifically addressed the economic damages sustained by Castellano, including his lost executive compensation. Had defendants opted to depose Trevino before trial, they could have thoroughly explored the details of his report. Thus, the trial court did not abuse its discretion in determining that, because estimates of Castellano’s future compensation were included in his expert report, defendants were not unfairly surprised by Trevino’s testimony as to Castellano’s personal damages derivative from the failure to franchise Fred’s.

k. Speculative Testimony

It is defendants’ position that the trial court also erred in admitting Trevino’s testimony as to Castellano’s individual damages, including the loss of executive compensation, because it was purely speculative and premised on the assumption that Castellano’s franchise would have been profitable.
While we have held that “[d]am-ages will not be awarded for lost profits that are merely speculative in nature,” we have tempered that rule explaining that, “ it is not necessary that recovery for future profits should be established by exact calculation, as it is enough to have data from which these profits may be ascertained with a reasonable degree of certainty and exactness.”[60]
Having reviewed the record, this court finds that Trevino’s testimony as to Cas-tellano’s individual damages was not speculative. Rather, Trevino formed and presented a competent opinion regarding Castellano’s individual lost profits, after the fire, with reasonable certainty by relying on his review of objective historical data, including: (1) Fred’s past economic figures and success as a restaurant before the fire, (2) the successes of other similar restaurants, and (3) other reference sources. Based on the above, 'this court concurs with the trial court’s determination that “Trevino was able to ascertain a *709 competent opinion regarding lost profits with reasonable certainty and without speculation.”

5. Punitive Damage Award

In reviewing an award of punitive damages, the focus of the reviewing court is to ensure that, under the circumstances of the case in question, the award is not grossly excessive or unreasonable.[61] To make that determination, the court should consider the following factors: (1) the degree of defendant’s reprehensibility or culpability, (2) the ratio between the compensatory and punitive damages;[62] and (3) the possible criminal and civil sanctions for comparable misconduct.[63]
In the case at bar, the jury found that defendants conspired to have Castellano falsely charged and convicted of arson — an insidious crime that loomed over him for years — by fabricating evidence. Such conduct is pusillanimous and unquestionably reprehensible. Further, considering the emotional and monetary harm Castellano suffered and will continue to endure through his life, the court finds that there is a reasonable relationship between the punitive damage award and the harm caused by defendants’ conduct. Finally, under Texas law, tampering with or fabricating physical evidence constitutes a third degree felony.[64] Therefore, the criminal and civil sanctions that could be imposed for comparable misconduct under state law are considerable and lead this court to conclude that the punitive damage award was not excessive.

6. Loss of Capacity for Enjoyment of Life and Global Damages Verdict Form

Defendants cite Dugas v. Kansas City Southern. Ry. Lines[65] for their position that the trial court erred in allowing the jury to consider “loss of enjoyment of life” as an element of Castellano’s damages. In Dugas, this court held that in a case involving the Federal Employer’s Liability Act, the trial court had erroneously instructed the jury as to damages because it had repeatedly stressed “loss of enjoyment of life” and “loss of vitality” as if they were separate and independent items of damages. However, in the case at bar, the trial court correctly explained that the jury was to consider “loss of enjoyment of life” as one of several factors in determining an appropriate compensatory damage award for Castellano. Accordingly, it was not an abuse of discretion for the trial court to deny defendants’ motion for a new trial on this issue.
Defendants rely on this court’s holding in In re Air Crash Disaster[66] for their argument that the trial court erred in sub *710 mitting a global damage jury verdict form. Defendants argument is misguided and the rationale employed in In re Air Crash Disaster is distinguishable from the case at bar. In that case, we held that the use of a global rather than specific interrogatories on the issue of damages in a wrongful death action required a new trial on the element of damages comprising the general award once it was determined that the total award exceeded the maximum recovery rule. In this case, however, there is no basis for this court to remit the damage award and because the amount awarded does implicate the maximum recovery rule, the trial court’s global damages interrogatory was not in error.[67]

7. Attorneys Fees Under § 1983-and § 1988

Defendants contend that the trial court erred in awarding Castellano criminal defense attorneys’ fees accrued during his criminal trial because 42 U.S.C. § 1988(b) only permits the recovery of attorney fees in “actions or proceedings to enforce the provisions of § 1983.”
While this court has yet to rule upon this issue, several circuits have reasoned that a plaintiff who is successful in a malicious prosecution claim should be reimbursed for the attorney’s fees expended during the original criminal proceeding. In Kerr v. City of Chicago, the court reasoned:
The defendants also contend that attorneys’ fees expended in a criminal action are not recoverable in a civil rights action. We disagree. In Basista v. Weir, 340 F.2d 74, 85-86 (3d Cir.1965), the court held that federal common law controls the question of damages in civil rights actions with the purpose being to vindicate the civil rights of the individual. A plaintiff in a civil rights action should be allowed to recover the attorneys’ fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant.[68]
Similarly, in Borunda v. Richmond,[69] the Ninth Circuit held that plaintiffs in a § 1983 civil rights suit, brought after they were wrongly arrested in violation of the Fourth Amendment, were entitled to recover attorneys’ fees incurred in their defense of state court criminal charges. The court explained:
Here, the attorneys’ fees arose out of the necessity of defending against allegedly unwarranted criminal charges and were presented to the trier of fact as an item of damage.
A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations.... The victim of the constitutional deprivation is entitled to compensation for economic harm, pain and suffering, and mental and emotional distress that results from the violations.
The [plaintiffs’] expenditures for legal representation during the prior criminal proceeding most assuredly constitute economic harm. The reasonable amount of these expenditures, if proved to the jury’s satisfaction to be the consequence of appellants’ illegal conduct, is recoverable as compensatory damages.
The amount of attorney’s fees incurred during the criminal prosecutions was a *711 direct and foreseeable consequence of appellants unlawful conduct.[70]
Finally, in Greer v. Holt, the Sixth Circuit declined to award attorneys’ fees incurred in an underlying prosecution where the plaintiff sued police under § 1983, but clarified that it, “express[ed] no opinion as to whether the client could recover attorneys’ fees as part of a damage package as, for example, in a malicious prosecution suit.”[71]
The plain language of § 1988 allows a prevailing plaintiff to recover costs expended to enforce the provisions of § 1983[72] and such a recovery is warranted in this case. Castellano was the “prevailing plaintiff’ and successfully proved that defendants conspired to violate his Fourth Amendment rights. Furthermore, in order to satisfy the elements of malicious prosecution in his § 1983 action, Castella-no had to prevail in his underlying criminal proceeding. Thus, his attorneys’ fees were expended as a necessary prerequisite of his action to “enforce” the protections of § 1983.
Further, and adopting the rationale of Kerr and Borunda,, Castellano’s expenditure of attorneys’ fees to defend himself in his criminal trial was, unquestionably, a foreseeable result of defendants’ actions. Had defendants not conspired to fabricate evidence to implicate Castellano in the arson, in violation of his Fourth Amendment rights, he would not have been arrested and prosecuted for the crime. Thus, this court holds that the trial court did not abuse its discretion in allowing Castellano to recover the attorneys’ fees he incurred during his criminal trial.

8. Testimony of Castellano’s Criminal Defense Attorney

Defendants contend that the trial court erred in allowing Castellano’s criminal defense attorney to testify as to his fees from a ledger, which had not been disclosed to them, because he could not recall the specific fees charged therein. On that basis, defendants argue that the damage award should be reversed and remanded for a new trial on damages.
This court reviews evidentiary rulings made over a party’s objections for abuse of discretion and harmless error.[73] At trial, Castellano’s attorney pointed out that Castellano’s claim for attorney fees expended during his criminal trial was no surprise to defendants because it was listed as an element of damages in each pretrial order prepared for trial. It is a well-settled rule that a joint pre-trial order, signed by both parties, governs the issues and evidence presented at trial.[74] Thus, defendants were on notice that Castellano was seeking attorneys’ fees from his criminal trial and the trial court did not abuse his discretion in allowing the criminal defense attorney to refresh his recollection as to the exact amount of those fees.[75]
*712 For all these reasons, we affirm the judgment of the trial court.
AFFIRMED.

. A few weeks before the fire, Castellano suspected Sanchez of stealing money from the restaurant and requested that she take a polygraph test in accordance with company policies. Sanchez repeatedly refused to take the test and was fired from Fred's a few days after the fire.

. Fragozo left his employment with Fred’s allegedly after Castellano refused to use his position on the Fire and Police Civil Service Commission to improperly obtain a copy of the lieutenant's test for Fragozo before the test was administered.

. Ex parte Castellano, 863 S.W.2d 476, 478-79 (Tex.Crim.App.1993).

. Id. at 479.

. 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

. 18 F.3d 318 (5th Cir.1994).

. Castellano subsequently dismissed his cause of action under the First Amendment.

. At trial, defendants objected to the inclusion of Trevino’s testimony arguing, in part, that they were unfairly surprised by his testimony because before trial he had only opined as to the amount of damages Fred's sustained — not the amount of damages Castellano suffered personally after his conviction, derivative from his business losses. The court permitted Trevino to testify as to the damages that Cas-tellano suffered personally as a result of malicious prosecution, such as his loss of executive compensation as a result of being unable to franchise Fred's. However, Trevino was not permitted to testify as to the losses sustained by Fred's.

.Trevino further explained that considering the number of restaurants Castellano opened in the past, his assumption that Fred's would have franchised at a rate of one restaurant a year was conservative.

. Defendants explained that they were relying on Judge Edith Jones's concurring opinion in Kerr v. Lyford, 171 F.3d 330, 342-343 (5th Cir.1999) (Jones, E., specially concurring) (addressing, in part, whether a cause of action for malicious prosecution required proof of any post-arraignment seizure).

. 90 F.3d 927 (5th Cir.1996).

. The trial court clarified that the issues included within its reasoning for "liability for malicious prosecution” included the sufficiency of evidence as to: (1) Castellano’s actual innocence of arson; (2) the existence, vel non, of probable cause; and (3) the alleged conspiracy between Fragozo and Sanchez to violate Castellano’s constitutional rights.

.Citing Allied Bank-West, N.A. v. Stein, 996 F.2d 111, 114-15 (5th Cir.1993).

. 510 U.S. 266, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

. Kerr, 171 F.3d at 339.

. Izen v. Catalina, 256 F.3d 324, 327 (5th Cir.2001) (quoting Kerr, 171 F.3d at 339); see also Piazza v. Mayne, 217 F.3d 239, 245 (5th Cir.2000) (noting that "malicious prosecution *699 implicates rights guaranteed by the Fourth Amendment and is therefore actionable under § 1983”); Eugene v. Alief Independent Sch. Dist., 65 F.3d 1299, 1305 (5th Cir.1995) (holding that this right was clearly established as early as 1972)
Defendants point out that there have been some judicial ruminations concerning what conduct is sufficient to prove a cause of action for malicious prosecution under the Fourth Amendment. See Kerr, 171 F.3d at 343 (Jones, E., specially concurring) (noting that "the tort of malicious prosecution fits uneasily within" the Fourth Amendment” and "[t]o justify a Fourth Amendment malicious prosecution claim ... one has to extend the period of 'seizure' past arraignment”).
In Gordy v. Burns, 294 F.3d 722, 726 (5th Cir.2002), we made clear that in a claim for malicious prosecution there is no requirement of post-arraignment seizure. Moreover, even if this court were to require independent proof of a violation of the Fourth Amendment in addition to proof of the tort of malicious prosecution, the analysis in this case would not change as Castellano established a violation of his Fourth Amendment rights with proof that he was seized and convicted by virtue of fraudulent evidence fabricated by the defendants — one of whom was a police officer.

. Izen, 256 F.3d at 328 (citing Evans v. Ball, 168 F.3d 856, 862-63 n. 9 (5th Cir.1999)).

. Gordy v. Burns, 294 F.3d 722, 725 (5th Cir.2002)(internal citations omitted).

. Id. at 726.

. Piazza, 217 F.3d at 245.

. Kerr, 171 F.3d at 340.

. 74 F.3d 578, 585 (5th Cir.1996).

. Fed.R.Civ.P. 51.

. Tompkins v. Cyr, 202 F.3d 770, 783 (5th Cir.2000) (citing 9 James W. Moore, Moore's Federal Practice § 51.21 [2] and Nero v. Industrial Molding Corp., 167 F.3d 921, 931-32 (5th Cir.1999)).

.Id. at 784 (5th Cir.2000) (citing Highlands Ins. Co. v. Nat’l Union Fire Ins. Co., 27 F.3d 1027, 1032 (5th Cir.1994)).

. Russell v. Plano Bank & Trust, 130 F.3d 715, 721 (citing Highlands Ins. Co., 27 F.3d at 1031-32) (quoting United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

. Turnage v. General Electric Co., 953 F.2d 206, 211-12 (5th Cir.1992) (quoting Bommarito v. Penrod Drilling Corp., 929 F.2d 186, 189 (5th Cir.1991)); see also Rubinstein v. Administrators of the Tulane Educational Fund, 218 F.3d 392, 404 (5th Cir.2000) (noting that "[e]ven if an instruction erroneously states the applicable law or provides insufficient guidance, this Court will not disturb the judgment unless the error could have affected the outcome of the trial”).

. Tompkins, 202 F.3d at 784 (citing ARA Automotive Group v. Central Garage Inc., 124 F.3d 720, 730 (5th Cir.1997)); Whiting v. Jackson State Univ., 616 F.2d 116, 126 (5th Cir.1980) (noting that failure to object to the jury charge in the trial court precludes review on appeal "unless the error is so fundamental as to result in a miscarriage of justice”).

. It should be noted that all counsels’ proposed jury instructions were submitted prior to the trial court’s dismissal of Castellano's malicious prosecution claim under the Fourteenth Amendment. Accordingly, their proposed instructions referred to Castellano's alleged "deprivation of liberty.”

. Tompkins, 202 F.3d at 784 (citing ARA Automotive Group v. Central Garage Inc., 124 F.3d 720, 730 (5th Cir.1997)).

. • Moreover, the jury instruction was not fatally flawed even if proof of illegal seizure were required. See infra note 33.

. Although it was unnecessary for Castellano to prove that he was "seized” pursuant to the Fourth Amendment to prevail in his § 1983 claim, it is pellucid that Castellano would easily satisfy that requirement because the jury found that he was arrested, convicted, and sentenced on the basis of fraudulent evidence.
Further, the record contains sufficient evidence that Castellano's seizure was "unreasonable.” For example, at trial, Castro admitted that “probable cause” to arrest Castellano was established when he received evidence implicating Castellano in the arson including: (1) the audio tape which, while not known to Castro, had been produced and altered by Fragozo and Sanchez and (2) Sanchez's statement concerning the fire. Under federal law, an "otherwise illegal arrest cannot be insulated from challenge by a decision of the instigating officer to rely on fellow officers to make the arrest.” See Whiieley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Thus, the fact that (1) Fragozo, a police officer, knew that the audio tape and portions of Sanchez's statement to Castro implicating Castellano in the arson was fraudulent and (2) Castro relied on such fraudulent evidence in establishing probable cause against Castellano, satisfies the "some evidence” standard that Castellano's arrest was unreasonable.

. See, e.g., U.S. v. Flintco Inc., 143 F.3d 955, 960 (5th Cir.1998); see also Satcherv. Honda Motor Co., 52 F.3d 1311, 1315 (5th Cir.1995) (explaining that the dual purposes of Rule 50 are: (1) allowing the trial court to re-examine the sufficiency of the evidence as a matter of law if, after verdict, the court must address a motion for judgment as a matter of law and (2) alerting the opposing party to the possible insufficient of his case before being submitted to the jury so that he/she has the opportunity to cure any defects in proof should the motion have merit); MacArthur v. University of Texas Health Center, at Tyler, 45 F.3d 890, 897 (5th Cir.1995).

. Polanco v. City of Austin, Tx., 78 F.3d 968, 974 (5th Cir.1996).

. This court will discuss the “damages” element infra.

. Powers v. Vista Chemical Co., 109 F.3d 1089, 1093 (5th Cir.1997) (citing Polanco, 78 F.3d at 974); Thrash v. State Farm Fire & Casualty Co., 992 F.2d 1354, 1356 (5th Cir.1993) (explaining that "[w]e will reject a verdict in those instances when, 'despite considering all the evidence in the light and with all reasonable inferences’ most favorable to the verdict, we find no evidence of 'such quality and weight that reasonable and fair-minded men in the exercise of impartial discretion' could arrive at the same conclusion”) (quoting Mozingo v. Correct Mfg. Corp., 752 F.2d 168, 176 (5th Cir.1985)).

. See Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir.1994).

. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("[t]o act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents”) (citation omitted).

. 175 F.3d 365, 374 n. 9 (5th Cir.1999).

. 157 F.3d 1032, 1036 n. 3 (5th Cir.1998).

. Snyder v. Trepagnier, 142 F.3d 791, 799-800 (5th Cir.1998).

. Bazan v. Hidalgo County, 246 F.3d 481, 490 (5th Cir.2001).

. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

. Wheeler v. Cosden Oil and Chemical Co., 734 F.2d 254, 260 (5th Cir.1984); Reeves v. City of Jackson, 608 F.2d 644, 650 (5th Cir.1979).

. 90 F.3d 927 (5th Cir.1996).

. See e.g., Oden v. Oktibbeha County Mississippi, 246 F.3d 458, 470-71 (5th Cir.2001) (upholding jury award of $20,000 in compensatory damages for mental anguish when the only evidence submitted by plaintiff was his own testimony that as a result of defendants' discrimination, he experienced stress, sleeplessness, betrayal, and shame); Williams v. Trader Pub. Co., 218 F.3d 481, 486-87 (5th Cir.2000) (upholding an award of $100,000 in compensatory damages for emotional distress premised solely on Williams’ testimony regarding her “severe emotional distress,” "sleep loss,” "severe loss of weight” and "beginning smoking”); Forsyth v. City of Dallas, 91 F.3d 769 (5th Cir.1996) (upholding jury verdict awarding two plaintiffs $100,000 and $75,000 respectively in emotional anguish damages based on their testimony that they suffered weight loss, depression, intestinal troubles, marital problems, and sleeplessness after they were demoted within the police force for making allegations of illegal wiretapping within the police department).

. Polanco, 78 F.3d at 973-74.

. Id. at 974 (noting that "[t]he standard for evaluating the sufficiency of evidence is whether the evidence has such quality that reasonable and fair-minded persons would reach the same conclusion”).

. Crawford v. Falcon Drilling Co., 131 F.3d 1120, 1133 (5th Cir.1997) (noting that "we must keep in mind 'this court’s longstanding *706 rule that reversal for plain error is 'not a run-of-the-mill remedy' and will occur only in exceptional circumstances to avoid a miscarriage of justice'") (quoting Highlands, 27 F.3d at 1032).

. See for example the court's reasoning in U.S. v. Flintco, 143 F.3d 955 (5th Cir.1998) (refusing to exempt party from Rule 50 because defendant did not move for judgment as a matter of law at close of plaintiff's case or at the close of all the evidence and did not challenge sufficiency of evidence as a basis for objecting to the court's jury instruction).

. See Marrero v. City of Hialeah, 625 F.2d 499, 514 & n. 19 (5th Cir.1980) (holding that “to the extent unconstitutional conduct caused injury to appellants' personal or business reputations, the injury is compensable as an element of damages” and explaining that “[s]ince the fourth amendment protects some of our most cherished rights, and the injury to reputation flowing from the violation of those rights may be devastating, we have no doubt that a principle of fair compensation requires that injury to reputation caused by a violation of fourth amendment rights be compensa-ble”).

. Tr. at 223.

. Tr. at 212.

. The court also notes” that the jury heard testimony that the damages Castellano personally suffered as a result of damages to his business were approximately $1,200,000. Therefore, we assume that the $3,000,000 compensatory damage award included Castel-lano’s personal economic losses.

. In re Air Crash Disaster, 795 F.2d 1230, 1232 (5th Cir.1986).

. Defendants cite no Fifth Circuit law in support of this contention and instead rely on jurisprudence from the Seventh and Eighth Circuits.

.St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 434 (5th Cir.2000); 5 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 1216 at 151-52 (citing Continental Collieries, Inc. v. Shober, 130 F.2d 631, 635 (3rd Cir.1942)) (noting that under Federal Rule of Civil Procedure 8, a complaint is required to afford “fair notice to the adversary of the nature and basis of the claim asserted and a general indication of the type of litigation involved”).

. Jon-T Chems., Inc. v. Freeport Chem. Co., 704 F.2d 1412, 1417 (5th Cir.1983).

. DSC Communications Corp. v. Next Level Communications, 107 F.3d 322, 329 (5th Cir.1997) (quoting Fiberlok, Inc. v. LMS Enter., 976 F.2d 958, 962 (5th Cir.1992) (internal citations omitted)); Hiller v. Mfrs. Prod. Research Group of North America, 59 F.3d 1514, 1520 (5th Cir.1995) (quoting the Texas Supreme Court for the proposition that "[t]he requirement of 'reasonable certainty' in the proof of lost profits is intended to be flexible enough to accommodate the myriad circumstances in which claims for lost profits arise ... [w]hether in a given case they should be so classified depends altogether upon the facts and circumstances of that particular case”).

. Eichenseer v. Reserve Life Ins. Co., 934 F.2d 1377, 1382 (5th Cir.1991).

. BMW of North America v. Gore, 517 U.S. 559, 580, 116 S.Ct 1589, 134 L.Ed.2d 809 (1996) (explaining that the proper inquiry is whether there is a reasonable relationship between the punitive damage award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred).

. Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 435, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); BMW, 517 U.S. at 575, 116 S.Ct. 1589; Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 20-21, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (noting that "appellate review makes certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition”); Eichenseer, 934 F.2d at 1382.

. Tex. Penal Code § 37.09

. 473 F.2d 821, 827 (5th Cir.1973).

. 795 F.2d 1230 (5th Cir.1986).

. We also note that under Federal Rule of Civil Procedure 49(b), the trial court is given the discretion to submit a general verdict form.

. 424 F.2d 1134, 1141 (7th Cir.1970).

. 885 F.2d 1384, 1389-91 (9th Cir.1988).

. Id. at 1389-90.

. 718 F.2d 206, 207, n. 1 (6th Cir.1983).

. Raley v. Fraser, 747 F.2d 287, 290 (5th Cir.1984) (noting that the language of § 1988 unambiguously provides that in an action to enforce § 1983, the court, "in its discretion, may allow the prevailing parly, other than the United States, a reasonable attorney's fee as part of the costs”) (quoting 42 U.S.C. § 1988).

. Tompkins, 202 F.3d at 779.

. Branch-Hines v. Hebert, 939 F.2d 1311, 1319 (5th Cir.1991); Hall v. State Farm Fire & Cos. Co., 937 F.2d 210, 212 (5th Cir.1991); Flannery v. Carroll, 676 F.2d 126, 129 (5th Cir.1982).

. See Fed.R.Evid. 803(5).